STATE v. DUNCAN McFARLAND.

(Filed 15 December, 1920.)

**1. Criminal Law—False Pretense.**

In order to convict of the crime of obtaining goods under false pretenses it is necessary for the State to show, beyond a reasonable doubt, the pro-

curement with fraudulent intent of the thing charged, or that it was done under a false representation as to existing facts, false within the knowledge of the party making them, or made recklessly without belief or any fair and just reason to believe in their truth, calculated and intended to deceive and which does deceive the person from whom money or things of value is taken, and reasonably relied on by such person at the time of the taking.

**2. Same—Instructions—Evidence.**

An instruction in an action for obtaining money or other thing of value under false pretense, which would make the defendant guilty if he had notice which would have put a reasonable man upon inquiry that would have revealed the truth of his misrepresentations, is reversible error, which is not cured because in other parts of the charge the correct principle of law relating thereto had been given.

**3. Same—Moving Cause.**

Where there is evidence that other conditions induced the transaction than the representations made by the defendant, upon trial for obtaining a thing of value under false pretense, an instruction to find the defendant guilty if his false statement in any way influenced the trade is reversible error, it being necessary that it be a moving cause and one without which the transaction would not have been made.

INDICTMENT for obtaining goods by false pretenses, tried before *Ray, J.,* and a jury, at March Term, 1920, of HENDERSON.

There were three of the indictments, respectively, for having obtained money on notes by false pretenses as to Frank Smith, J. G. Walker, and W. J. Baldwin. The same having been consolidated and tried together, there was a verdict of not guilty as to Smith and Walker and guilty as to W. J. Baldwin. Judgment on the verdict, and the defendant excepted and appealed, assigning errors, etc.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*
*Jones & Williams for defendant.*

HOKE, J. There was evidence on the part of the State permitting the inference that defendant, acting as agent for the Asheville Milling Company, in the early part of 1918, induced a purchase for value of shares of stock in said company at much more than their actual worth by false representations and assurances as to the value of said stock and by statements of existent facts bearing on such value knowingly made and calculated and intended to deceive, and which did deceive the purchaser, etc. A false statement, among others, being that the company had bought a valuable lot in Fletcher, N. C., with a view of erecting a warehouse thereon for the storage of grain, etc. There was evidence for the defendant tending to show that the Asheville Milling Company

having conceived the plan of enlarging and strengthening their business by creating warehouses for the purchase and storage of grain in some of the adjacent towns and selling shares of stock to citizens of the different communities advertised for agents for making said sale, etc. That the defendant, who had been in the Canadian army, discharged because he had developed tuberculosis, was in Asheville seeking restoration to health, and in answer to said advertisement applied for and received the appointment as one of the agents, and entered upon the sale of stock to certain persons in Fletcher, Baldwin and others; that defendant was assured by Mr. Danielson, a manager or super-agent of the company, that the stock of $100 par value was well worth $120. There was evidence ultra of assets owned by the company tending to support the estimate. That the defendant had heard negotiations for the purchase of the lot in question between Danielson and the owner, and was afterwards told by Danielson that the purchase had been completed; that the defendant did not knowingly make any false statement inducing the sale, as to the value of the stock or ownership of the lot, but believed, and had every reason to believe, that the statements made by him in both respects were true. There was evidence also to the effect that the purchaser, Baldwin, did not buy on any assurance of value given by defendant or statement by him about the lot, but refused to purchase till he could ascertain if certain influential citizens had bought some of the stock, and on being shown the notes of these persons given for stock, which they had bought, the trade was made, etc. Upon this, a sufficient statement of the case to a proper apprehension of the defendant's exceptions, the court, in its charge, after correctly defining the offense, stated very fully the testimony pertinent to the issue and the position of the respective parties concerning it, and in reference to the falsity of the statement as to the purchase of the lot and the requisite knowledge thereof on part of the defendant, instructed the jury, among other things, as follows: "Now, in this connection, the State contends that he was there when Danielson approached Mr. Fletcher about the purchase of the lot, asked him if he could not sell the lot, if he could not negotiate the purchase for this milling corporation, and that Mr. Fletcher remarked that he would take it up with the other heirs. Now if that would have led a reasonable man to have gone on and examined the statement afterwards of Danielson that he had purchased the lot, and a reasonable man, being in the town of Fletcher, and would not have inquired to ascertain from the parties who owned the lot and with whom the negotiations were pending, and a man of business, would have relied upon Danielson, or the information obtained from him, and that would not be gross carelessness, and would not amount to a dereliction of duty, then, gentlemen, you would find the defendant not guilty. But if an

ordinary prudent man would have investigated this further, having met the man Danielson but a short time before in Asheville, and had gone out to Sandy Mush on that week and gone to work on the last day of the week after and without investigating his standing, but went on placing confidence in him, as the State contends, if this was the conduct of a reasonably prudent man, then you would acquit him, but if that was not the conduct of an ordinarily prudent man, then he would be guilty, and you would so find. Because a man can be criminally careless in prudence in finding out these things that he has represented to other men." In this excerpt the court gives clear intimation, if not positive direction, that false pretense can be established and criminal responsibility imputed by reason not of knowledge actually passessed by defendant, but that which might have been acquired if defendant had pursued the inquiry incumbent upon a man of ordinary business prudence. Such a rule may at times prevail as to fixing one with notice in matters of civil litigation, but is not at all permissible in a criminal charge of this nature. The basis of the crime is a fraudulent intent on the part of the wrong-doer arising ordinarily from actual knowledge. His Honor, in this case, and more than once, in accord with our decisions, had instructed the jury that to constitute false pretense there must be false representations as to existent facts, false within the knowledge of the party making them, or made recklessly without belief or any fair and just reason to believe in their truth, calculated and intended to deceive, and which do deceive, the person from whom the money or thing of value is taken, and reasonably relied on by such person at the time of taking. *S. v. Whedbee,* 152 N. C., 770; *Modlin v. R. R.,* 145 N. C., 218; *S. v. Whidbee,* 124 N. C., 796; *S. v. Moore,* 111 N. C., 667; *S. v. Munday,* 78 N. C., 460; *S. v. Phifer,* 65 N. C., 321. And in departing from this the correct position, and in permitting the jury to impute criminal knowledge to defendant because he had failed to act as a prudent business man in pursuing inquiry that would lead to knowledge, the portion of the charge excepted to is well calculated to mislead the jury, and should be held for reversible error. Again, in reference to the claim of the defendant and the evidence tending to support it that the false statement complained of did not induce the trade, but the purchaser bought only on being shown that a Mr. Fletcher and others in whom he had confidence had already bought some shares of the stock, and further, as to the effect of causes in addition to the alleged false statements having influenced the purchase, the court give the jury the following instruction: "But if you find that the inducement was the representation that they owned the lot, and you find that the representation was false, and that it was intended to deceive, and that it did deceive, and that the witness Smith did not rely upon that representation in fact, but it

entered into the negotiations of subscribers to the stock, and parted with his note for the stock by reason thereof, and that it entered into it, though not wholly, but was part of the influence that caused him to subscribe for the stock, if it entered into his consideration, then, gentlemen, if you find that beyond a reasonable doubt; then the defendant would be guilty.

"What I am trying to get you to understand is that the witness Smith might or could rely in part upon the inducement offered by the defendant, if he did offer it, that is, that they had purchased a lot and would build a warehouse on it, if he did not rely wholly upon the fact that Fletcher had gone into the corporation, then the defendant would still be guilty, because he must not influence him in any way by false pretense.

"Now, gentlemen, that would apply what I have said in this connection, as to the partial fraud not being the whole cause, but if it entered, however little, if it entered in as any part of the inducement, in either of the other cases," etc.

In a recent work of approved excellence, it is said to be the better opinion on this subject that "in order to sustain a conviction for false pretense, it is not necessary that the owner should be induced to part with his property solely and entirely by pretenses which are false, nor need the pretense be the paramount cause of the delivery to the purchaser. It is sufficient if they are a part of the moving cause, and that without these the person defrauded would not have parted with his property." 11 R. C. L., p. 836, and an examination of the authorities cited. *Woodbury v. State,* 69 Ala., p. 242; *S. v. Briggs,* 74 Kansas, 377; *In re Snyder,* 17 Kansas, 542, and other cases will show that to be a correct and well considered statement of the law applicable. In the portion of the charge here excepted to, we do not think the defendant was given the proper benefit of this position, the charge in effect being that "if the false statement in any way influenced the trade it would suffice and did not at all require either within the terms or meaning of the principle that it shall be "a moving cause, and one without which the purchase would not have been made." For the error indicated, we are of the opinion that the defendant is entitled to have the cause tried before another jury, and it is so ordered.

New trial.