STATE OF NORTH CAROLINA v. JOHN R. BANKS

No. 7420SC845

(Filed 19 February 1975)

1. **False Pretense § 1— obtaining property by false pretense — elements of crime**

The elements of the offense of obtaining property by false pretense are a false representation by the defendant, by conduct, word or writing, of a subsisting fact, which is calculated and intended to

deceive, which does in fact deceive, and by which defendant obtains something of value from another without compensation.

2. **False Pretense § 3— obtaining money by false pretense — sale of encumbered property — sufficiency of evidence**

In a prosecution for obtaining money by false pretense where defendant allegedly received a sum from a buyer as a portion of the sale price of a house and lot upon the representation made to the buyer by defendant that the lot was free and clear of all liens when in fact defendant knew that there was an outstanding indebtedness secured by a recorded deed of trust on the property, evidence was sufficient to support a jury finding that the buyer did rely upon defendant's representation when he parted with his money and that in signing and delivering the deed and accepting buyer's check, defendant knew he was representing that the property was clear of encumbrances.

3. **False Pretense § 3— land free of encumbrance — no promise to do something in future by seller**

Provision in a deed from defendant to buyer that the property conveyed was free and clear of encumbrances did not amount to a promise to do something in the future, that is, to pay off a prior mortgage on the land after the sale was closed, thereby constituting a defense to a charge of false pretense.

APPEAL by defendant from *Smith, Judge.* Judgment entered 18 June 1974. Heard in the Court of Appeals 19 November 1974.

Criminal prosecution for obtaining money by false pretenses, a violation of G.S. 14-100.

Defendant was tried on his plea of not guilty to an indictment which charged that he feloniously, knowingly and designedly, and with intent to cheat and defraud, obtained from Donald B. Harris, the sum of $5,067.53, in that defendant, as president of Talley-Rand Construction Company, Inc., received that sum from Harris for a portion of the sale price of a house and lot upon the representation made to Harris by the defendant that the lot was free and clear of all liens, when in fact defendant knew that there was an outstanding indebtedness of more than $28,000.00 secured by a recorded deed of trust on the property.

The State's evidence showed: On 23 May 1973 Talley-Rand Construction Company, Inc., acting through defendant, who was its president, executed a written contract with Harris by which the Construction Company, as seller, agreed to sell to Harris a certain house and lot, "conditional upon the Seller being able to convey a good and marketable title free and clear of en-

cumbrances except ad valorem taxes." The agreed contract price was $38,000.00, of which Harris paid at the time of signing the contract the sum of $32,932.47, "to be held in escrow by Seller as agent" until the sale should be closed or the agreement otherwise terminated. The contract provided that the balance of $5,067.53 was to be paid in cash upon delivery of the deed.

The sale was closed on 13 July 1973, at which time Harris gave the defendant his check for $5,067.53 payable to the Construction Company and defendant delivered to Harris the deed of the Construction Company, executed in its name by defendant as its president, conveying to Harris the house and lot in question. The check bore the notation, "For Balance on House & Lot 421 S. Brookgreen," was marked on the back, "For Deposit Only," and was subsequently cleared through Harris's bank account. The deed contained the usual covenants of warranty, including the covenant that the property conveyed was free from any and all encumbrances. In fact the lot was subject to the lien of a recorded deed of trust dated 6 June 1972 which defendant, as president of the Construction Company, had executed in its name to secure an indebtedness to Stockton, White & Company for a construction loan in the original principal amount of $56,600.00. This deed of trust originally covered two lots, including the lot subsequently conveyed to Harris, but the other lot was later released. At the time of defendant's trial, the lot conveyed to Harris was still subject to the deed of trust and the balance of the indebtedness to Stockton, White & Company was in excess of $28,000.00.

After the sale to Harris was closed, defendant, as president of the Construction Company, executed an agreement dated 27 August 1973 with Stockton, White & Company, by which the maturity date of the note secured by the deed of trust was extended to 27 February 1974. On 20 February 1974 defendant went to Harris and told him of the deed of trust, saying he had been trying to get the money to pay it off and did not want Harris to lose.

Other evidence for the State will be referred to in the opinion. Defendant offered no evidence but moved for a directed verdict at the close of the State's evidence. The motion was denied, and the jury found defendant guilty as charged. Judgment was entered imposing a prison sentence, execution of the sentence being suspended and the defendant being placed on probation on the condition, to which defendant assented, that

he pay to the Clerk of Court in stated installments the sum of $29,278.77 with interest, being the sum required to make restitution to Harris for cancellation of the deed of trust. From this judgment defendant appealed.

*Attorney General Edmisten by Assistant Attorney General Charles R. Hassell, Jr. for the State.*

*Kenneth W. Parsons for defendant appellant.*

PARKER, Judge.

By the only assignment of error brought forward in his brief, defendant challenges the sufficiency of the evidence to take the case to the jury. In this connection we treat defendant's motion for a directed verdict as though it had been a motion to dismiss the action or a motion as in case of nonsuit, *State v. Holton,* 284 N.C. 391, 200 S.E. 2d 612 (1973), and apply the same well established rules in testing the sufficiency of the evidence. So doing, we find the evidence sufficient and that defendant's motion was properly denied.

[1]   The elements of the offense of obtaining property by false pretense are (1) a false representation by the defendant, by conduct, word or writing, of a subsisting fact, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which defendant obtains something of value from another without compensation. *State v. Houston,* 4 N.C. App. 484, 166 S.E. 2d 881 (1969). The false representation that land is free from encumbrances, when knowingly made in order to effect a sale, as in *State v. Munday,* 78 N.C. 460 (1878), or to obtain a loan, as in *State v. Howley,* 220 N.C. 113, 16 S.E. 2d 705 (1941), may be the subject matter of the offense, and conviction therefor will be sustained where the evidence is sufficient to support a jury finding that all of the elements of the crime exist.

[2]   In the present case the evidence is uncontradicted that the representation was made that the land was free from any and all encumbrances. The warranty in the deed expressly so stated. The evidence that this representation was false was also uncontradicted. Defendant contends that nevertheless the case should not have been submitted to the jury because, so he argues, the evidence was insufficient to support a jury finding either (1) that Harris relied upon the representation and was

thereby induced to part with his money, or (2) that defendant knowingly made the representation.

On the first point, defendant stresses that there was no evidence that defendant made any oral or written representations to Harris as to the status of the title to the land excepting the covenants contained in the deed, and he points to the testimony of Harris, brought out on cross-examination, to the effect that, while he read the deed on the morning the sale was closed, he could not remember whether he read it before or after he gave his check for it and that he could not say whether he read it while he was still in the lawyer's office where the sale was closed or while he was on his way to the office of the Register of Deeds, where he filed the deed for recording at 10:20 a.m. on 13 July 1973. We do not view this uncertainty in Harris's testimony such as to preclude the jury from finding that in parting with his money he relied upon defendant's representation that the property was free from encumbrances. Harris held a real estate license and had dealt in real estate over a period of years. In his opinion the property was worth $38,000.00, the amount he had agreed to pay for it, when he delivered his check to defendant for the full balance of the contract price on 13 July 1973 and received in return the deed from the defendant. He testified that he knew that "a warranty deed normally states that it is free and clear of all encumbrances, debts or liens," and he held a contract, signed by defendant, entitling him to purchase the property "conditional upon the Seller being able to convey a good and marketable title free and clear of encumbrances." In view of this contractual provision, defendant's mere action in handing the deed to Harris and accepting the check in return from him constituted an implied representation that the land was free from encumbrances. Viewing all of the evidence in the light most favorable to the State, resolving any uncertainties and discrepancies in Harris's testimony in its favor, and giving the State the benefit of all legitimate inferences which might reasonably be drawn from the evidence, we find it sufficient to support a jury finding that Harris did rely upon defendant's representation when he parted with his money.

We also find the evidence sufficient to support a jury finding that in signing and delivering the deed and accepting Harris's check, defendant knew he was representing that the property was clear of encumbrances. There was evidence that defendant had previously worked in a bank, where Harris had

first known him, and that when the sale was closed he had for some time been the chief corporate officer in a company engaged in the construction business. The covenant against encumbrances was expressed in plain and unambiguous English language. Defendant signed the deed containing the covenant and had previously signed the sale contract, which was also expressed in clear language, by which his company agreed to sell only conditional upon being able to convey the property free and clear of encumbrances. The jury could find from this evidence that defendant well knew and understood the nature of the representation which he made by signing and delivering the deed and that by those actions he intended to deceive Harris and to induce him to part with his money.

[3]  Finally, citing *State v. Phifer,* 65 N.C. 321 (1871) and *State v. Knott,* 124 N.C. 814, 32 S.E. 798 (1899), for the well-established proposition that a promise to do something in the future, however false, is not a false pretense within G.S. 14-100, defendant contends that under the evidence in this case the representation that the lot was free from encumbrances must be construed to have been no more than a promise by the seller that the prior mortgage would be paid after the sale was closed. Again we do not agree. Defendant's argument appears to be that, because of the language in the sale contract that the seller would hold the initial payment of $32,932.47 in escrow until the sale should be closed, it would have been unlawful for the seller to use these funds to pay off the prior mortgage at any time prior to the final closing, from which defendant derives the conclusion that the practical effect of the warranty against encumbrances under the factual setting of this case is that it could only amount to a promise to do something in the future. Defendant's argument ignores the fact that at all times the seller was legally free to use other funds to pay off the prior mortgage indebtedness which it admittedly owed and that not one word is said in the sale contract about using any portion of the sale price for this purpose. It is, of course, true that in closing real estate sales it is not at all unusual that portions of the purchase price will be applied to pay off existing encumbrances, but this is done as an essential part of the closing itself, and it would be an unusual transaction indeed in which the buyer parted with his cash in exchange for no more than the seller's unsupported promise to pay off then existing liens at some future time. Certainly nothing in the evidence in the present case suggests that Harris agreed to any such arrange-

ment or that at the time he paid the balance of the purchase price in full he even had any reason to believe that any prior lien existed. The covenant against encumbrances in the deed given to Harris is expressed in the present tense, and we see no circumstance in the present case to support defendant's contention that the representation contained in the clear language employed meant something other than what it plainly said.

In the trial and judgment appealed from we find

No error.

Chief Judge BROCK and Judge BRITT concur.