STATE OF NORTH CAROLINA v. RALPH GLENN HINES

No. 771SC768

(Filed 18 April 1978)

**1. False Pretense § 2— indictment—allegation that victim was deceived**
    An indictment for false pretense need not allege specifically that the victim was in fact deceived Nhen the facts alleged suggest that the false pretense was the probable motivation for the victim's conduct.

**2. False Pretense § 2.1— indictment—facts showing victim was deceived**
    An indictment for false pretense alleged facts sufficient to suggest that defendant's false pretense was the probable motivation for the victim's conduct where it alleged that defendant falsely represented to the victim that he was an employee of the Administrative Office of the Courts and had received authorization to hire the victim as a State employee; defendant was not so employed and had no such authority; defendant purported to hire the victim as a State employee at a certain salary; and defendant obtained secretarial services from the victim as a purported State employee.

**3. False Pretense § 1— elements of crime—"without compensation"**
    "Without compensation" is not an element of the crime of false pretense which must be alleged and proved by the State.

**4. False Pretense § 1— payment of some compensation**
    A defendant can be convicted of obtaining goods by false pretense in violation of G.S. 14-100 even though adequate compensation (in an economic sense) is actually paid if the compensation actually paid is less than the amount represented.

APPEAL by defendant from *Albright, Judge.* Judgment entered 18 May 1977 in Superior Court, DARE County. Heard in the Court of Appeals 19 January 1978.

By bill of indictment defendant was charged with obtaining secretarial services from Karen Ann Etheridge by false pretenses. Defendant pled not guilty, was convicted by the jury, and judgment was entered on the verdict sentencing him to imprisonment in the Dare County jail for a term of not less than 5 nor more than 7 years. From this judgment, defendant appealed.

Evidence presented by the State is summarized as follows: During the fall of 1976, John A. Krider asked the defendant Ralph Glenn Hines if he could help his (Krider's) granddaughter, Karen Ann Etheridge, get a job. The defendant said he might be able to help. The defendant told Mr. Krider he was "co-ordinator" of a district of the judicial system. On 2 October 1976, defendant

brought Mr. Krider and Miss Etheridge an application for employ-
ment with the State of North Carolina. Mr. Hines told Miss
Etheridge that he was employed by the Administrative Office of
the Courts as co-ordinator for the clerks of court of the various
counties in the judicial district. He further told her that he
needed an assistant and that he would like to employ her. Miss
Etheridge filled out the application and returned it to Mr. Hines.

In early December 1976, Mr. Hines brought to Mr. Krider
and Miss Etheridge a letter on stationery purporting to be that of
the Administrative Office of the Courts and supposedly signed by
Franklin E. Freeman, Jr. The letter was addressed to Ralph G.
Hines, "Special Inspector in Charge". Mr. Hines was not so
employed; indeed, there was no such position. Evidence tended to
show that Mr. Hines had photocopied genuine stationery and had
signed Mr. Freeman's name. The letter which Mr. Hines
presented to her contained a statement that Miss Etheridge
would be employed on 1 January 1976 as "Co-ordinator Region 1"
by the State and that she would be employed at "Pay Grade 10"
and would receive an annual salary of $10,089.56 plus all the "nor-
mal benefits" of State employees. Later that same month, Mr.
Hines presented a second falsified document which purported to
be correspondence from Franklin E. Freeman which set out addi-
tional requirements for the job.

Mr. Hines was employed by W. L. Wilson Bonding Company
and also served as State Treasurer of the North Carolina Associa-
tion of Professional Bondsmen. Mr. Hines was never employed by
the Administrative Office of the Courts.

The starting date of her employment was postponed from 1
January until 10 January. However, Mr. Hines had delivered
three books to Miss Etheridge which she was to read prior to
reporting for work. Prior to 10 January, Mr. Hines also gave Miss
Etheridge instructions as to her duties. Pursuant to Mr. Hines's
instructions, Miss Etheridge "checked the docket" for Wilson
Bonding Company at the 10 January Special Session of Dare
County Superior Court. Mr. Hines indicated to her that these ser-
vices were part of her new employment with the State when, in
fact, these services were solely for his own benefit. On two other
days after 10 January 1977, Mr. Hines obtained Miss Etheridge's
services by having her type up a report for Wilson Bonding Com-

pany. Again, Mr. Hines indicated that these secretarial services were part of her new State job when, in fact, the services were solely for his own benefit. Miss Etheridge thought the work she was doing was as an employee of the State.

On 18 January 1977 Miss Etheridge accompanied Mr. Hines on a business trip to Chapel Hill and Raleigh. Miss Etheridge received $200 in cash for her expenses. Mr. Hines told her that the purpose of the trip was to allow her to attend a training program in Chapel Hill for her new State job. The trip in reality was a business trip for Mr. Hines. When she returned to Manteo and investigated the situation, Miss Etheridge refused to have any further dealings with Mr. Hines until he got the matters "straightened out".

Miss Etheridge was never employed by the State of North Carolina and never received any money or employee benefits from the State. Miss Etheridge received a check from Mr. Hines in the amount of $148.48 drawn on the account of the North Carolina Association of Professional Bail Bondsmen. The check "bounced", but Mr. Hines later had the money wired to her account. Miss Etheridge had performed all these services believing they were part of the duties of her new job with the State of North Carolina. When she finally concluded that she had been deceived, Miss Etheridge reported the matters to the authorities.

*Attorney General Edmisten, by Associate Attorney Thomas H. Davis, Jr., for the State.*

*Aldridge and Seawell, by G. Irvin Aldridge, for defendant appellant.*

MORRIS, Judge.

Defendant has raised three primary issues in his brief: (1) Is it necessary that the bill of indictment specifically allege that the victim was in fact deceived? (2) Can there be a conviction under G.S. 14-100 when some compensation is given for the services obtained by false pretenses? (3) Can the defendant be convicted of a violation of G.S. 14-100 when adequate compensation is in fact given but the compensation actually paid is less than the compensation promised?

[1]   First, defendant strongly urges that the failure of the bill of indictment to charge that Miss Etheridge was in fact deceived necessitates the dismissal of the charges against him. He contends (1) that *State v. Hinson*, 17 N.C. App. 25, 193 S.E. 2d 415 (1972), *cert. denied* 282 N.C. 583 (1973), *cert. denied* 412 U.S. 931 (1973), should be overruled but (2) that even if it is not overruled it is distinguishable.

In *Hinson* this Court squarely confronted the question of whether the indictment had to charge specifically that the victim was in fact deceived when the indictment clearly showed a relationship between the false pretense and the victim's conduct. We concluded that the specific allegation was unnecessary. In the present case, the relationship between the false pretense and the victim's conduct is clear. The defendant, pretending to have the authorization to do so, offered the victim a State job, and the victim went to work. Thus, *Hinson* is controlling under the facts in this case, and defendant's arguments for our overruling it are not persuasive. Therefore, for the reasons stated in *Hinson*, we again hold that the specific allegation in the bill of indictment that the victim was in fact deceived is unnecessary when the facts alleged suggest that the false pretense was the probable motivation for the victim's conduct.

[2]   Defendant has urged that *Hinson* is distinguishable. He argues that the facts alleged in the indictment do not suggest that the victim was motivated by the fraudulent representations. The indictment alleged that Mr. Hines

". . . did unto Karen Ann Etheridge falsely pretend that, he, the said, RALPH GLENN HINES, was employed by the Administrative Office of the Courts of the State of North Carolina as Special Inspector in charge of the Region I Field Office, Manteo, North Carolina, and that, he, the said, RALPH GLENN HINES, had received authority to employ Karen Ann Etheridge as an employee of the State of North Carolina at an annual salary of $10,089.56 in the position of Co-ordinator of Region I pursuant to a letter dated December 7, 1976 from Franklin E. Freeman, Jr., Acting Director of the Administrative Office of the Courts of the State of North Carolina; whereas in truth and in fact, he, the said, RALPH GLENN HINES, was not employed by the Administrative Office

of the Courts of the State of North Carolina as a Special Inspector in charge of the Region I Field Office, and he, the said, RALPH GLENN HINES, did not receive authority from Franklin E. Freeman, Assistant Director of the Administrative Office of the Courts pursuant to a letter dated December 7, 1976 to employ Karen Ann Etheridge as an employee of the State of North Carolina in the position of the Co-ordinator of Region I at an annual salary of $10,089.56. By means of which said false pretense, he, the said, RALPH GLENN HINES, knowingly, designedly and feloniously, did then and there unlawfully attempt to obtain and did obtain from Karen Ann Etheridge services, goods, and things of value, to wit: secretarial services as a purported employee of the State of North Carolina . . . ."

The indictment, thus, alleges facts sufficient to suggest that the false pretense was the probable motivation for the victim's conduct. Applying the principles enunciated in *Hinson*, we are of the opinion that the indictment was sufficient in this regard.

[3]  Next, defendant contends that one cannot be lawfully convicted of a violation of G.S. 14-100 if any compensation is given. He relates this argument to three facets of the case. First, he contends that his motion to dismiss should have been allowed because the indictment did not allege that the services were obtained "without compensation". Next he argues that his motion for nonsuit should have been allowed because the State failed to prove that the services were obtained "without compensation". Finally, he urges that the instructions to the jury were erroneous because the court failed to instruct the jury that a verdict of not guilty must be returned if the jury should find that any compensation at all was paid. This contention of defendant's is necessarily premised upon the position that "without compensation" is an element of the crime of false pretense which must be proved by the State and found by the jury.

Defendant relies on *State v. Agnew*, 33 N.C. App. 496, 500-501, 236 S.E. 2d 287 (1977), *rev'd on other grounds*, 294 N.C. 382, 241 S.E. 2d 684, where this Court, quoting with approval from *State v. Davenport*, 227 N.C. 475, 495, 42 S.E. 2d 686, 700 (1947), said:

"The essential elements which the State must prove to the satisfaction of the jury beyond a reasonable doubt in order to convict one of the crime of false pretense are as follows:

' ". . . [A] false representation of subsisting fact [or of a future fulfillment or event as provided in G.S. 14-100 as amended in 1975], calculated to deceive, and which does deceive, and is intended to deceive, whether the representation be in writing, or in words, or in acts, by which one man obtains value from another, without compensation. . . ." ' *State v. Davenport*, 227 N.C. 475, 495, 42 S.E. 2d 686, 700 (1947); see also *State v. Roberts*, 189 N.C. 93, 126 S.E. 161 (1925); *State v. Wallace*, 25 N.C. App. 360, 213 S.E. 2d 420 (1975); *State v. Banks*, 24 N.C. App. 604, 211 S.E. 2d 860 (1975)."

It does appear that this Court in *Agnew* and the Supreme Court in *Davenport* have recognized "without compensation" as an element of the crime. We think a closer look at the cases will show that this is not the case. The phraseology used in both cases came as a direct quote from *State v. Phifer*, 65 N.C. 321, 323 (1871). There the facts were these: Defendant went to the store of one Leopold Rosenthal and represented that he was the son of P. Phifer of New York and offered to sell to Rosenthal the goods of P. Phifer and Company. He also asked Rosenthal to cash several drafts on P. Phifer and Company but his request was refused. Subsequently he offered to buy a diamond ring and did obtain the ring paying for it by a draft on P. Phifer and Company. He represented to Rosenthal that the draft would be paid on presentation and Rosenthal delivered the ring to him in reliance on his representation that the draft would be paid on sight. The draft was returned protested and unpaid. Defendant was not the son of P. Phifer and knew the draft would not be paid. The words of the statute which the Court was asked to construe were ". . . by means of any forged or counterfeited paper in writing or in print, or by any false token, *or other false pretense* whatsoever, obtain . . . any money, goods, property, or other thing of value. . . ." (Emphasis supplied.) Rev. Code, Chapter 34 § 67. The defendant contended at trial, and the trial court agreed, that false pretense means the same as false token and that, regardless of how false the words, the use of mere words could never be sufficient to

make out a case against the defendant. The Court discussed the offense at common law under Hen. 8, and 30 George II, and concluded that a promise to do something in the future or a representation of a future event would not come within the statute, but "a false allegation of some subsisting fact" would be indictable, and there need not be a token. The Court then stated the rule and included therein were the words "without compensation". Obviously in *Phifer* the victim received absolutely nothing, as is the case in a great many false pretense cases. The fact was certainly applicable. The Court did not discuss the question of the victim's compensation, nor was it before the Court. Because of Justice Reade's full and clear discussion of the offense, *Phifer* became the leading case in this State and has been cited and quoted many times since the opinion was delivered. Our research indicates that in those cases wherein *Phifer* has been quoted, the quotation has included the phrase "without compensation". In those cases wherein the Court cites *Phifer* as the leading case but does not quote directly from it, the elements do not include "without compensation". For example, in *State v. Hefner*, 84 N.C. 751 (1881), and *State v. Mikle*, 94 N.C. 843 (1886), Justice Ashe quoted the entire paragraph from *Phifer*, but in *State v. Eason*, 86 N.C. 674 (1882); *State v. Dickson*, 88 N.C. 643 (1883); and *State v. Mathews*, 91 N.C. 635 (1884), he sets out the elements of the offense under § 67, Chapter 32, Battle's Revisal and cites *Phifer* but nowhere does the phrase "without compensation" appear. *See also State v. Smith*, 78 N.C. 462 (1878); *State v. Mangum*, 116 N.C. 998, 21 S.E. 189 (1895); *State v. Matthews*, 121 N.C. 604, 28 S.E. 469 (1897); *State v. Whedbee*, 152 N.C 770, 67 S.E. 60 (1910); *State v. McFarland*, 180 N.C. 726, 105 S.E. 179 (1920); *State v. Yarboro*, 194 N.C. 498, 140 S.E. 216 (1927). An interesting treatment is found in *State v. Carlson*, 171 N.C. 818, 89 S.E. 30 (1916). Justice Walker, speaking for a unanimous Court, said:

> "A criminal false pretense may be *defined* to be the false representation of a subsisting fact, whether by oral or written words or conduct, which is calculated to deceive, intended to deceive, and which does in fact deceive, and by means of which one person obtains value from another without compensation. *S. v. Phifer*, 65 N.C., 321; *S. v. Whedbee*, 152 N.C., 770. *In order to convict* one of this crime *the State must satisfy the jury beyond a reasonable doubt* (1) that the

representation was made as alleged; (2) that property or
something of value was obtained by reason of the representa-
tion; (3) that the representation was false; (4) that it was
made with intent to defraud; (5) that it actually did deceive
and defraud the person to whom it was made. *S. v. Whedbee,
supra.*" (Emphasis supplied.) 171 N.C. at 824.

It seems abundantly clear that the Court never intended the
victim's failure to receive compensation to be an element of the
offense. Certainly, beginning with the statute codified as Potter's
Revisal of 1819, laws of 1811, Ch. 814 § 2, through the present
G.S. 14-100, there is and has been no statutory requirement that
the State must prove that the defendant obtained the goods,
property, things of value, services, etc., without compensation to
the victim. Nor has our research disclosed a case in which the
question of the victim's compensation was before the Court,
although in some cases the victim received nothing at all, and in
some the victim did receive some compensation of a sort. We con-
clude that the phrase "without compensation" has constituted
*obiter dictum* in the cases where it has been used, and it is not an
element of the offense of false pretense.

[4]  Finally, defendant argues that if the compensation paid the
victim was adequate in an economic sense (that is, the fair market
value) then there could be no intent to defraud. In defendant's
view, if he intended to pay the fair market value for the services
of Miss Etheridge even if that is less than the amount he
represented she would receive, then there was no intent to
defraud, and the court's failure to instruct the jury with regard to
the adequacy of compensation would then be reversible error.

In both *State v. Wallace,* 25 N.C. App. 360, 213 S.E. 2d 420,
*cert. denied* 287 N.C. 468 (1975), and *State v. Banks,* 24 N.C. App.
604, 211 S.E. 2d 860 (1975), this Court upheld convictions for viola-
tions of G.S. 14-100 even though there was some compensation.
These two cases, however, did not involve a situation in which the
compensation was arguably adequate. It appears that the par-
ticular issue raised by the defendant has never been squarely ad-
dressed by this Court.

The question most often arises in cases dealing with security
for loans. In the typical case, the defendant represents that prop-
erty is unencumbered when he pledges it as security for a loan.

The victim later discovers that the property was in fact encumbered when the defendant secured the loan. The courts frequently then must determine whether the defendant can be convicted without a showing of an actual economic loss.

> "It has been held by a majority of courts that have considered the problem that a pecuniary loss by the victim is not an essential element of the crime and that the adequacy of the security offered to obtain a loan or credit, if materially misrepresented, constitutes no defense." Annot., 53 A.L.R. 2d 1215 (1957). *See also United States v. Nelson*, 97 App. D.C. 6, 227 F. 2d 21 (D.C. Cir. 1955), *cert. denied* 351 U.S. 910 (1955); *People v. Talbot*, 65 Cal. App. 2d 654, 151 P. 2d 317 (1944), *cert. denied* 324 U.S. 845 (1944). *But see Wilson v. State*, 84 Ga. App. 703, 67 S.E. 2d 164 (1951).

Though the courts of this State have not directly addressed the issue, the Supreme Court did affirm a conviction for obtaining money by false pretenses where the defendant falsely represented that the property pledged as security for a loan was unencumbered when in fact there was a prior lien. The Court did not deem it necessary to investigate the adequacy of the security. *State v. Howley*, 220 N.C. 113, 16 S.E. 2d 705 (1941). Thus, North Carolina appears to align itself with the majority position.

The majority rule, then, is that a showing of actual pecuniary loss by the victim/prosecuting witness is not necessary to sustain a conviction for obtaining property through false pretenses. *See, e.g., State v. Meeks*, 30 Ariz. 436, 247 P. 1099 (1926); *State v. Moss*, 194 Ark. 524, 108 S.W. 2d 782 (1937); *People v. Bartels*, 77 Colo. 498, 238 P. 51 (1925); *State v. Green*, 144 Tex. Crim. 186, 161 S.W. 2d 114 (1942); *State v. Sargent*, 2 Wash. 2d 190, 97 P. 2d 692 (1940); *State v. Anderson*, 27 Wyo. 345, 196 P. 1047 (1921). The states which require a showing of actual economic loss are clearly in the minority. *See State v. McGee*, 97 Ga. 199, 22 S.E. 589 (1895). While North Carolina has not expressly adopted either position, we believe that cases such as *Howley*, *Wallace*, and *Banks* do suggest that North Carolina is more closely aligned with the majoirty position.

Additionally, sound reasoning supports the majority position. First of all, there is a type of economic harm in cases such as the case now before this Court. Here the victim was to have a job

with the State, a position which included the actual cash income, job security, and all the fringe benefits. Instead of the State job, she received compensation for a few days work from the individual who had, representing himself as employed by the State with authority to hire, promised her a State job. One cannot realistically argue that the difference between the representations made and what she actually received did not amount to an economic loss. The real question, therefore, is whether there is the requisite fraudulent intent if there was adequate compensation.

A careful examination of G.S. 14-100 reveals that the essense of the crime is the intentional false pretense — not the resulting economic harm to the victim. *See State v. Garris*, 98 N.C. 733, 4 S.E. 633 (1887). A civil action for damages would be the proper vehicle for remedying any pecuniary loss. The gravamen of the criminal offense, however, is making the false pretense and, thereby, obtaining another person's property or services. The simple purpose of G.S. 14-100 is to prevent persons from using false pretenses to obtain property. The ultimate loss to the victim, therefore, is an issue which is irrelevant to the purpose of the criminal statute and is an issue properly within the province of the civil courts.

Furthermore, when G.S. 14-100 is applied in accordance with the majority rule set out above, it functions in a manner quite like other criminal laws. The criminal law cannot and should not rush to the aid of every citizen who strikes a bad bargain. The criminal law, however, is the proper mechanism to insure that goods and services are freely surrendered and not taken away, irrespective of the economic realities. Thus, theft is punished even if the property stolen is worthless on the open market. Similarly, to protect the interest of the victim in her personal services, the criminal law will intervene because those services were obtained by a false representation even though some compensation was paid.

[4] Therefore, we hold that a defendant can be convicted of obtaining goods by false pretenses in violation of G.S. 14-100 even though some compensation is paid if the compensation actually paid is less than the amount represented. In this case, the amount

paid was clearly not what the defendant represented to the victim that she would receive.

We think the Court in *State v. Walton*, 114 N.C. 783, 787, 18 S.E. 945 (1894), succinctly stated the law:

> "The intent to deceive was established to the satisfaction of the jury by the proof of the false representation that the paper presented was a genuine order, when, whatever may have been the motive of the defendant, this representation was to his own knowledge false, the commissioners never having made such order. It was calculated to deceive, because it was apparently genuine and attested by the proper officer. It did deceive, because by means of it the defendant obtained the money. *S. v. Phifer*, 65 N.C., 321."

Here the intent to deceive was established to the satisfaction of the jury by the proof that the defendant falsely represented that he was a State employee possessing authority to contract with the prosecuting witness for a State job, when, "whatever may have been the motive of the defendant" this representation was false and he knew it to be false. It was calculated to deceive. He presented what appeared to be an authentic letter from a State official. It did deceive, because the prosecuting witness performed services for him without obtaining a State job.

We have carefully reviewed all of the defendant's assignments of error and find no reversible error.

No error.

Judges CLARK and MITCHELL concur.