IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-502

No. COA20-494

Filed 21 September 2021

Wake County, Nos. 16 CRS 000293, 16 CRS 001034, 16 CRS 201664

STATE OF NORTH CAROLINA

v.

JENNIFER LYNN PIERCE, Defendant.

Appeal by Defendant from judgment entered 16 September 2019 by Judge Rebecca W. Holt in Wake County Superior Court. Heard in the Court of Appeals 25 May 2021.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Teresa L. Townsend, for the State.*

*Mark L. Hayes for defendant-appellant.*

MURPHY, Judge.

A trial court does not err in denying a defendant's motion to dismiss where the State presented substantial evidence, when viewed in the light most favorable to the State, of each essential element of the crime charged. Here, presuming, without deciding, the phrase "person within this State" is an essential element of obtaining property by false pretenses under N.C.G.S. § 14-100(a), the State presented substantial evidence that the victim was a person within this State. The State also

met its burden to show the gross value of the property obtained under false pretenses was $100,000.00 or more in each timeframe supporting the four separate convictions. We discern no error.

## BACKGROUND

In 2006, Defendant Jennifer Lynn Pierce employed Brian Knight[1] at her telemarketing business. In 2008, Knight left Defendant's company and went back to school to become a police officer. Around 2010 or 2011, Knight acquired two convenience stores, including one that was attached to a Marathon gas station. In 2015, the North Carolina Department of Revenue seized both convenience stores due to Knight falling behind on paying the stores' taxes. At that time, Knight and Defendant reconnected with each other.

After Knight explained his financial struggles to Defendant, she offered to help. Defendant told Knight she could use his name and his convenience store businesses to purchase phones at a discount from AT&T[2] and resell them at full retail value, a scheme that ultimately came to be known as the Merry Marathon project. Using Knight's personal and business information, Defendant represented to AT&T that Merry Marathon was a charity associated with Knight's convenience store

---

[1] Knight was also charged for his roles in the alleged criminal activities.
[2] For ease of reading, and which is made more clear in note 8, *infra*, we refer to "AT&T" generically, as it appears in the indictments, throughout this opinion.

attached to the Marathon gas station and the charity needed a large quantity of Apple iPhones[3] for telemarketing purposes.

¶ 4    Knight testified the iPhones were sent to his business, and he brought them to Defendant, after which he was "not quite sure" what happened to them. However, Knight knew the iPhones would leave Defendant's possession and he would get money in return. AT&T's fraud team began to suspect illegal behavior and gathered information regarding the billing and transaction records for the Merry Marathon account. This information was passed along to the United States Secret Service, as well as the North Carolina Secretary of State's Office.

¶ 5    Defendant was indicted on five counts[4] of obtaining property by false pretenses valued at $100,000.00 or more and two charges of accessing government computers to defraud.[5] The obtaining property by false pretenses valued at $100,000.00 or more charges were identified by shipping date, and the gross value of the goods falsely obtained for count one was $110,547.99 from 28 July 2014 to 29 August 2014; $162,797.04 from 16 September 2014 to 17 September 2014 for count two;

---

[3] Defendant also ordered a small number of tablets, but the majority of the items she ordered and obtained were iPhones.

[4] At the close of the State's evidence, the State dismissed one count of obtaining property by false pretenses valued at $100,000.00 or more, leaving the remaining four counts to go to the jury.

[5] The two accessing government computers to defraud charges are not part of this appeal.

$116,047.93 on 22 September 2014 for count three; and $131,597.74 from 23 September 2014 to 22 October 2014 for count four. The indictments each alleged:

> THE JURORS FOR THE STATE UPON THEIR OATH PRESENT that on or between [the alleged dates], in Wake County, [Defendant] unlawfully, willfully, and feloniously did knowing and designedly with the intent to cheat and defraud, obtain Apple iPhones from AT&T by means of a false pretense which was calculated to deceive and did deceive. The false pretense consisted of the following: [Defendant] pretended to operate a charity when in fact the charity was non-existent. [Defendant] entered into an agreement with AT&T to purchase Apple iPhones for the fraudulent charity and make payments. [Defendant] then failed to make payments on the agreement and sold the devices for cash. At the time [Defendant] knew that the charity did not exist. The value of the iPhones was greater than $100,000.00.[6] This act was done in violation of [N.C.G.S.] § 14-100 and against the peace and dignity of the State.

¶ 6    At trial, the State presented testimony from AT&T's senior fraud case manager, Pam Tyler. Tyler's testimony explained and discussed State's Exhibit #1, which was a spreadsheet with information about the Merry Marathon project, including what type of iPhones were purchased, the dates the iPhones were purchased, the addresses the iPhones were shipped to, and the dollar figures for the

---

[6] We note the indictments, in alleging the Class C felony as opposed to the Class H felony, improperly reference the value of the falsely obtained goods as "greater than $100,000.00" when the statute only requires the "value is one hundred thousand dollars ($100,000[.00]) or more[.]" N.C.G.S. § 14-100(a) (2019). This defect in the indictment was not fatal and did not deprive the trial court of subject matter jurisdiction.

"sale price" and the "actual fraud loss." Tyler testified the "sale price" column represented "what [AT&T] would charge the customer." She further clarified that, in this case, "[b]ecause of [the] large sale, they -- it looks like [Defendant] worked out a deal with [AT&T] where they got [] what we call a subsidized price on the phones, but there's an *actual retail value* of the phone that AT&T or any carrier actually pays" to buy the iPhones from the supplier. (Emphasis added). Tyler testified the dollar figure in the "actual fraud loss" column represented "the actual value of each [iPhone,] . . . the actual price." Tyler also testified some payments had been made, but she "[did not] have that figure." She stated "there were [] some [] payment reversals[,]" meaning "[t]he check didn't clear or was reversed by the financial institution."

¶ 7        A jury found Defendant guilty of all four counts of obtaining property by false pretenses valued at $100,000.00 or more and guilty of the two charges of accessing government computers to defraud. Defendant received a consolidated active sentence of 100 to 132 months on the obtaining property by false pretenses valued at $100,000.00 or more convictions and a consecutive consolidated active sentence of 20 to 33 months on the accessing government computers with the intent to defraud convictions. Defendant verbally gave notice of appeal.

## **ANALYSIS**

¶ 8        Defendant argues the trial court erred when it denied her motion to dismiss because there was not substantial evidence of each essential element of obtaining property by false pretenses under N.C.G.S. § 14-100.  Specifically, Defendant argues (A) "[t]he State presented no evidence that [the victim of the crime] was a 'person within this State,'" and (B) "[t]he State presented no evidence upon which a jury could conclude that the property [obtained under false pretenses] was worth more than $100,000[.00]."

¶ 9        N.C.G.S. § 14-100 defines the crime of obtaining property by false pretenses:

> (a) If any person shall knowingly and designedly by means of any kind of false pretense whatsoever, whether the false pretense is of a past or subsisting fact or of a future fulfillment or event, obtain or attempt to obtain from any person within this State any money, goods, property, services, chose in action or other thing of value with intent to cheat or defraud any person of such money, goods, property, services, chose in action, or other thing of value, such person shall be guilty of a felony[.] . . .  If the value of the money, goods, property, services, chose in action, or other thing of value is one hundred thousand dollars ($100,000[.00]) or more, a violation of this section is a Class C felony.  If the value of the money, goods, property, services, chose in action, or other thing of value is less than one hundred thousand dollars ($100,000[.00]), a violation of this section is a Class H felony.
>
> . . . .
>
> (c) For purposes of this section, "person" means person, association, consortium, corporation, body politic, partnership, or other group, entity, or organization.

N.C.G.S. § 14-100 (2019).

¶ 10        "This Court reviews the trial court's denial of a motion to dismiss *de novo*."

*State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).

> Upon [the] defendant's motion for dismissal, the question
> for the Court is whether there is substantial evidence (1) of
> each essential element of the offense charged, or of a lesser
> offense included therein, and (2) of [the] defendant's being
> the perpetrator of such offense.  If so, the motion is properly
> denied.

*State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455, *cert. denied*, 531 U.S. 890,

148 L. Ed. 2d 150 (2000).  "Substantial evidence is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Smith*, 186 N.C.

App. at 62, 650 S.E.2d at 33.  "In making its determination, the trial court must

consider all evidence admitted, whether competent or incompetent, in the light most

favorable to the State, giving the State the benefit of every reasonable inference and

resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d

211, 223 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995).

### A. "Person Within this State"

¶ 11        Defendant argues "[b]y the plain language of [N.C.G.S.] § 14-100, it is an

essential element of the crime that the victim is a 'person within this State'" and the

State failed to meet its burden in proving this element of the crime.  Our research

reveals that this is an argument that has not been addressed by our appellate courts

and  initially  we  note  that  our  caselaw  has  consistently  observed  the  essential

elements to the offense of obtaining property by false pretenses under N.C.G.S. § 14-100 are: "(1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another." *State v. Parker*, 354 N.C. 268, 284, 553 S.E.2d 885, 897 (2001), *cert. denied*, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002); *see also State v. Cronin*, 299 N.C. 229, 242, 262 S.E.2d 277, 286 (1980); *State v. Hallum*, 246 N.C. App. 658, 664, 783 S.E.2d 294, 299, *disc. rev. denied*, 368 N.C. 919, 787 S.E.2d 24 (2016).

This is an issue of first impression;[7] however, we need not address whether "person within this State" is an essential element of obtaining property by false pretenses because, even if it is, the element has been satisfied here. Knight testified

---

[7] The law covering the King of England's realm in 1757 did not include a geographical restriction. The first time a law was enacted in North Carolina which included any potential geographical restriction was when the General Assembly included "within this state" in the statute codified as Potter's Revisal of 1819, laws of 1821, Ch. 814 § 2. *Compare* 30 Geo. II, ch. 24, § 1 (emphasis added) ("That from and after the twenty ninth day of September one thousand seven hundred and fifty seven, all persons who knowingly and designedly, by false pretence or pretences, *shall obtain from any person or persons*, money, goods, wares or merchandizes, with intent to cheat or defraud any person or persons of the same . . . .") *with* 1811, c. 814, § 2, P.R. (emphasis added) ("That from and after the passing of this act, if any person or persons shall knowingly and designedly, by means of any forged or counterfeit paper, in writing or in print, or by any false token or other false pretence or pretences whatsoever, *obtain from any person or persons, or corporation within this state*, any money, goods, property or other thing of value, or any bank note, check, or order for the payment of money issued by or drawn on any bank or other society . . . .").

the iPhones were shipped to an AT&T store that operated out of Greenville, and

AT&T's agent also relinquished possession of iPhones in Wilson and Goldsboro[8]:

> [THE STATE:] Okay. The phones that were being sent and shipped by AT&T as part of this Merry Marathon project, where were they being sent to? Where were you receiving them?
>
> [KNIGHT:] Different -- some -- some were sent to this -- my location in Wilson, which was a Marathon store, just like the account was -- was addressed under and some were given to me, brought to me by Tracy who was my account manager from AT&T. She would bring them to me sometimes. So just, you know, if she brought them -- she brought them to me sometimes, sometimes they were shipped to the store in boxes.
>
> [THE STATE:] Okay. That Tracy, is that Tracy Fryer

---

[8] On appeal, for the first time, Defendant posits that AT&T is made up of various different subsidiaries, including AT&T, Inc., AT&T Operations, Inc., AT&T Wireless Services, Inc., AT&T Corp., and AT&T Mobility, LLC, and argues "even if a corporation becomes 'a person within this State' by the presence of any of its stores, the State presented no evidence that this AT&T store was owned or operated by the AT&T corporation which was the victim in this case. . . . One cannot automatically assume that one AT&T entity is 'within this State' just because another AT&T entity is 'within this State[.]'" We interpret Defendant's argument to be a fatal variance argument regarding which entity is the actual victim of the crime. *See State v. Fink*, 252 N.C. App. 379, 386-87, 798 S.E.2d 537, 542 (2017) (finding no fatal variance where the indictment referred to the corporation as "Precision Auto Care, Inc." and the evidence at trial tended to show the corporation's name was "Precision Franchising, Inc."). As Defendant's motion to dismiss was based solely on the grounds of insufficient evidence and not on the grounds of a fatal variance, it was not properly preserved for appellate review. *See State v. Everette*, 237 N.C. App. 35, 40, 764 S.E.2d 634, 638 (2014) (citations omitted) ("To preserve a fatal variance argument for appellate review, a defendant must state at trial that an allegedly fatal variance is the basis for his motion to dismiss. At trial, [the] [d]efendant based his motion to dismiss solely on the grounds of insufficient evidence. Therefore, [the] [d]efendant did not properly preserve for appellate review his argument that there was a fatal variance . . . ."). Therefore, we do not consider this portion of Defendant's argument in our resolution of this appeal.

Williams?

[KNIGHT:] That's correct.

[THE STATE:] And she was an AT&T employee in Greenville?

[KNIGHT:] Right. She was like a business specialist which she didn't particularly work inside in one location. Sometimes I would meet her in Wilson, she would meet at that location. And sometimes it was Greenville and also Goldsboro, so . . .

[THE STATE:] Okay. And some times when you met she would actually deliver you some of these phones as part of the Merry Marathon project?

[KNIGHT:] That's correct.

[THE STATE:] Okay. And then you said a bunch or many of them came to your actual Marathon store in Wilson.

[KNIGHT:] Right.

[THE STATE:] Each time that you received phones either from Tracy or that were shipped to your store, what did you do with them?

[KNIGHT:] I would take them straight to Raleigh.

[THE STATE:] Where would you go in Raleigh with them?

[KNIGHT:] I would go to [Defendant's] house on San Gabriel in Raleigh. I would leave them with her. And after that I'm not sure where they went.

¶ 13    Presuming, without deciding, that "person within this State" is an essential element to the offense of obtaining property by false pretenses, a reasonable mind could conclude AT&T was operating as a "person within this State" from the above-

quoted testimony; the falsely obtained iPhones came from a store operated by the victim, AT&T, located in North Carolina. The State presented substantial evidence from which a reasonable mind could conclude that AT&T is a "person within this State." N.C.G.S. § 14-100(a) (2019) ("If any person shall . . . obtain or attempt to obtain from any person within this State . . ."). The trial court properly denied Defendant's motion to dismiss on this basis.

## B. Valuation of the Property Obtained by False Pretenses

¶ 14    Defendant also argues the trial court erred in denying her motion to dismiss because the State did not meet its burden to present evidence that the value of the iPhones falsely obtained by Defendant in each time period was at least $100,000.00. Accordingly, Defendant argues she should have only been convicted of four Class H felonies, as opposed to four Class C felonies. *See* N.C.G.S. § 14-100(a) (2019) ("If the value of the [goods falsely obtained] is one hundred thousand dollars [] or more, a violation of this section is a Class C felony. If the value of the [goods falsely obtained] is less than one hundred thousand dollars [], a violation of this section is a Class H felony.").

¶ 15    Our caselaw has not defined the term "value" in the context of N.C.G.S. § 14-100(a). However, our caselaw has defined the term "value" in the context of property crimes to be synonymous with "fair market value." *See State v. Shaw*, 26 N.C. App. 154, 157, 215 S.E.2d 390, 392-93 (1975) (citations omitted) ("As used in [N.C.G.S. §]

14-72(a) for determining whether the crime is a felony or a misdemeanor, the word 'value' means the fair market value of the stolen item at the time of the theft. In the case of common articles having a market value, the courts . . . have declared the proper criterion to be the price which the subject of the larceny would bring in open market–its 'market value' or its 'reasonable selling price', at the time and place of the theft, and in the condition in which it was when the thief commenced the acts culminating in the larceny[.]"); *State v. Cook*, 263 N.C. 730, 736, 140 S.E.2d 305, 310 (1965) ("The word 'value,' as used in the [grand larceny] statute, does not mean the price at which the owner would sell, but means . . . fair market value."). We hold that this reasoning is persuasive and that the term "value," as used in N.C.G.S. § 14-100, means fair market value of the item at the time it was falsely obtained.

¶ 16     To this end, Defendant also argues "[t]he State's evidence concerning the original purchase prices and subsidized retail prices of the phones is insufficient to establish the fair market value of the phones." We disagree.

¶ 17     "A verdict or finding as to value may be based on evidence of the price which the owner had paid for [the] property shortly before its theft . . . ." *Shaw*, 26 N.C. App. at 158, 215 S.E.2d at 393. The jury was provided with State's Exhibit #1, a spreadsheet containing dollar figures in a column labeled "actual fraud loss." Tyler testified the actual fraud loss value represents the actual retail value of the iPhone, not the price AT&T charges the customer. The jury was free to either consider these

values or not consider them in determining the iPhones' fair market value, and whether it considered them does not affect the outcome of our analysis. *See State v. Miller*, 289 N.C. 1, 4, 220 S.E.2d 572, 574 (1975) ("What the evidence proves or fails to prove is a question of fact for the jury."); *State v. Blagg*, 2021-NCSC-66, ¶ 11 (marks omitted) ("Courts considering a motion to dismiss for insufficiency of the evidence should not be concerned with the weight of the evidence."). Based on Tyler's testimony, a reasonable mind could have interpreted State's Exhibit #1 as representing the prices which AT&T had paid to its supplier for the iPhones before Defendant falsely obtained them. There was sufficient evidence presented to the jury to allow it to conclude the fair market value of the iPhones was equivalent to the "actual fraud loss" figures in State's Exhibit #1.

¶ 18        Defendant also argues even if the actual fraud loss figure could be construed as the fair market value of the iPhones, "[t]he jury could not calculate the value of the falsely-obtained property without knowing the value of the payments [made by Defendant] for that property."

¶ 19        At trial, Tyler testified to the following on cross-examination:

> [DEFENSE COUNSEL:] Okay. And how much payment did [AT&T] actually receive on [the Merry Marathon] accounts?
>
> [TYLER:] I don't know. There [were] some deposits, payments made, and I don't have that figure.

> [DEFENSE COUNSEL:] You understand -- maybe you don't -- do you understand that part of this offense deals with how much -- one of the elements is the amount that [AT&T is] out of pocket?
>
> [TYLER:] We have that document -- what we put as a loss is what we lost.
>
> [DEFENSE COUNSEL:] Okay. How much was paid, because the phones that you get for free, correct, I mean, something was paid to get them?
>
> [TYLER:] They paid deposits on some of the accounts. And there were also some reversals, payment reversals.
>
> [DEFENSE COUNSEL:] What does that mean?
>
> [TYLER:] The check didn't clear or was reversed by the financial institution.

¶ 20    Defendant relies on *State v. Kornegay* to assert that "[b]ecause large payments for the phones were paid, the obtained property consists of only a portion of the devices' overall fair market values."  *See State v. Kornegay*, 313 N.C. 1, 326 S.E.2d 881 (1985).  Defendant misconstrues our Supreme Court's recitation of an exercise of prosecutorial discretion in its preliminary statement for *Kornegay* as substantive law. *Id*. at 6, 326 S.E.2d at 887; *see Henderson v. Wilmington*, 191 N.C. 269, 278, 132 S.E. 25, 30 (1926) ("Upon this question the appeal was prosecuted; not upon that of levying a tax or pledging the credit of the city.  The reference in the reported case to municipal wharves as 'public necessities' appears incidentally in the preliminary statement. It

is not a part of the opinion; so it cannot be accepted as a precedent or as the expression of the Court.").

¶ 21        In *Kornegay*, the defendant, an attorney, obtained a settlement for his client in which she had to pay $104,000.00. *Kornegay*, 313 N.C. at 8, 326 S.E.2d at 889. The defendant falsely represented to his client that he settled the suit for $125,000.00 and instructed his client to bring him a check in the amount of $125,000.00. *Id.* at 28, 326 S.E.2d at 901. The defendant's client delivered him a check in the amount of $125,000.00, the defendant tendered a check for the settlement in the amount of $104,000.00, and the defendant kept the remaining $21,000.00 for himself. *Id.* The defendant was indicted and charged with obtaining $21,000.00 from his client by false pretense. *Id.* The information from *Kornegay* that Defendant relies on is merely a recitation of what the defendant was charged with, and not even dicta, much less a holding from our Supreme Court.

¶ 22        Despite Defendant's reliance on a premise not found in our substantive body of law, her argument and other hypotheticals are not without logic or reason. In her brief, Defendant argues:

> This Court has not previously addressed how to calculate the value of falsely obtained "money, goods, property, services, chose in action, or other thing of value" when that item of value is part of a greater asset. For example, if a perpetrator purchased a $100,000[.00] bar of gold using one valid cashier's check for $95,000[.00] and a second forged cashier's check for $5,000[.00], then the victim has

only been swindled out of $5,000[.00]. The falsely-obtained property is the $5,000[.00] interest in the gold bar, not the entire $100,000[.00] gold bar. On those facts, the perpetrator would be guilty of a Class H felony, not a Class C felony.

However, we hold that *State v. Hines* is more applicable to the facts of this case. *State v. Hines*, 36 N.C. App. 33, 243 S.E.2d 782, *appeal dismissed and disc. rev. denied*, 295 N.C. 262, 245 S.E.2d 779 (1978).

In *Hines,* we discussed the purpose of N.C.G.S. § 14-100:

> A careful examination of [N.C.G.S. §] 14-100 reveals that the essence of the crime is the intentional false pretense – not the resulting economic harm to the victim. A civil action for damages would be the proper vehicle for remedying any pecuniary loss. The gravamen of the criminal offense, however, is making the false pretense and, thereby, obtaining another person's property or services. *The simple purpose of [N.C.G.S. §] 14-100 is to prevent persons from using false pretenses to obtain property. The ultimate loss to the victim, therefore, is an issue which is irrelevant to the purpose of the criminal statute and is an issue properly within the province of the civil courts.*
>
> . . . . The criminal law cannot and should not rush to the aid of every citizen who strikes a bad bargain. The criminal law, however, is the proper mechanism to ensure that goods and services are freely surrendered and not taken away, irrespective of the economic realities. Thus, theft is punished even if the property stolen is worthless on the open market. . . . .
>
> Therefore, we hold that a defendant can be convicted of obtaining goods by false pretenses in violation of [N.C.G.S. §] 14-100 even though some compensation is paid . . . .

*Id.* at 42, 243 S.E.2d at 787-88 (emphasis added) (citation omitted).

¶ 24    Under the reasoning of *Hines*, the intent of N.C.G.S. § 14-100 is to focus on the act of the false pretense and the perpetrator's intent to deceive, not on any particular economic damage to the victim. Any payment that may or may not have been made toward the iPhones that were falsely obtained is irrelevant for resolution of this issue.

¶ 25    While *Kornegay* could have presented an opportunity for our Supreme Court to overturn our reasoning in *Hines*, it did not do so. *Kornegay* did not deal with the issue of net valuation or setoffs; rather, it only recognized the defendant's procedural posture.[9] *Hines* establishes that we are only concerned with the gross fair market valuation of the property obtained, not the net gain in value to the criminal.[10]

¶ 26    The State presented substantial evidence from which the jury could conclude the gross fair market value of the property falsely obtained was $100,000.00 or more. The trial court did not err in denying Defendant's motion to dismiss on this basis.

## CONCLUSION

---

[9] We further note Defendant makes no other arguments related to the theory of the case pursued by the State at trial to undercut the applicability of *Hines* and "[i]t is not the role of the appellate courts . . . to create an appeal for an appellant." *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361, *reh'g denied*, 359 N.C. 643, 617 S.E.2d 662 (2005).

[10] This interpretation of *Hines* is further supported by the potential setoff being otherwise considered by the General Assembly. N.C.G.S. § 15A-1340.16 lays out a number of mitigating factors to be considered in *sentencing*, including "[t]he defendant has made substantial or full restitution to the victim." N.C.G.S. § 15A-1340.16(e)(5) (2019). N.C.G.S. § 15A-1340.16(e)(5) recognizes potential payments as a mitigating factor, but not as part of the substantive crime.

Presuming, without deciding, that the phrase "person within this State" is an essential element of N.C.G.S. § 14-100, the State presented sufficient proof regarding the element. In addition, the State presented sufficient evidence for the jury to conclude the value of the goods that were falsely obtained was $100,000.00 or more to support each of the four indictments. The trial court did not err in denying Defendant's motion to dismiss the Class C felonies.

NO ERROR.

Judges TYSON and JACKSON concur.