## THE STATE *v.* ROBERT PHIFER.

To sustain an indictment for obtaining goods by a false pretense, under our Statute, Rev. Code, ch. 34, sec. 67, there must be a false representation of a subsisting fact, calculated to deceive and which does deceive, whether the representation be in writing, or in words, or in acts, by which the defendant obtains something of value from another without compensation. But this does not extend to what are called "mere tricks of trade" by which a man puffs his goods.

The doctrine of cheating by false tokens at the common law and under the Statute of Henry 8th, and by false pretences under the Statutes of 30 George 2, ch. 24, and our Act, discussed and explained.

The case of *State* v. *Simpson*, 3 Hawks 620, cited and explained.

This was an indictment for obtaining goods by false pretences under the statute in the Revised Code, ch. 34, sec. 67, tried at the Special Term of WAKE Superior Court in January, 1871, before his Honor, *Judge Watts,* when the jury found the following special verdict:

"That the defendant, Robert Phifer, came to the store of the prosecutor, Leopold Rosenthal, representing himself as the son of one P. Phifer, of New York, and offering to sell goods for the house of P. Phifer & Co., to the said Rosenthal. He came to the store of Rosenthal several times and requested Rosenthal to cash several drafts on P. Phifer & Co., which request was refused. He afterwards offered to buy of Rosenthal a diamond ring, and did obtain the said ring, paying for it by a draft upon P. Phifer & Co., which draft the defendant stated, would be paid upon presentation. Rosenthal delivered the ring to him upon the faith of the representation that he was the son of P. Phifer, and that the draft would be paid on sight. The draft was returned protested and unpaid. The defendant was not the son of P. Phifer, and knew that the draft would not be paid." Upon this verdict the Court was of opinion that the defendant was not guilty and

21

gave a judgment accordingly, from which the Solicitor, Cox, appealed.

*Ovide Dupre*, for defendant.
*Attorney General* and *Busbee & Busbee*, for the State.

READE, J.   At common law, to cheat by false symbol or token, was a crime.   What was such symbol or token was sometimes difficult to determine, and the decisions left it in some confusion.   It was settled that it must be some *act* or *thing* as contra distinguished from mere *words*.

A further question was made, in regard to which there were contradictory decisions, as to whether the symbol or token must not be of a public character calculated to impose upon the public generally—as false weights and measures— as contra distinguished from such as were used to impose upon a private or particular individual.   To remedy this last difficulty, the statute of Hen. 8 was passed, which, reciting the mischief, that the practice had grown up of " getting into possession goods and chattels, &c., by *privy* tokens and counterfeit letters in other men's names," makes such *privy* tokens indictable.   This statute, added to the common law, makes all cheats by false tokens, whether of a public or private nature, indictable.   But still, there must be a token, as distinguished from mere words.

But crime is fruitful in expedients.   As trade increased and commerce spread out over the world, and stranger had to deal with stranger, and it became impossible for vigilance and prudence to apply the tests of truth—such as weights and measures, actual examinations, or diligent inquiry in business transactions; *words* had to be trusted.   And false words were as ready to be used as false tokens.   And thus it became necessary to pass the statute of 30 George II, which makes cheating by "*false pretense*" indictable.

Our statute is intended to embrace all that was indictable

at common law, under Hen. 8, and 30 George II. The words of our statute are, " any forged or counterfeited paper in writing or print, or by any false token, or other false pretense whatsoever."

We have already seen what are false tokens; it is now to be considered what are false pretenses under 30 George II, and under our statute.

The objection is taken, that false pretense means the same as false token, and that in no case will mere words, however false, make out a case of guilt. To sustain the objection English authorities were cited : but we think they are misunderstood and misapplied. They are decisions under the common law and under Hen. 8, and not under George II. But the case chiefly relied on to support the objection is to be found in our own reports, *State* v. *Simpson*, 3 Hawks 620. In that case A said to B, I want to see the judgment you have against me, to ascertain the amount and pay it off. And when the judgment was handed to him he kept it. This was held to be not a false pretense under our statute. We are inclined to think that it was not, for reasons which will be hereafter given. And, therefore, we are not under the necessity of overruling that case.

But we cannot concur with the Court in the reasoning and definitions. Judge Henderson in delivering the opinion said : " Our own statute requires that the cheat should have been effected by means of some token or false *contrivance*, * * * *," for if a cheat practiced by a bare and naked lie was designed to be brought within the statute, why insert in the specifications, false writings, tokens, &c., or why insert any specifications at all? The words " any false pretense whatsoever must, therefore, mean pretenses of the like kind, something more than a naked lie, something of the same family with those specified." There is no authority cited by the Court and the only authority cited in argument was East's P. C. Title Cheat. An examination of East will show

abundant authority to support the position that a naked lie will not do—that there must be some *token*—but they are cases at common law and under Hen 8. And the Court seems to have given no consideration to the cases under George II, except to say incidentally that, whatever they are, they do not affect the case. The Court evidently thought that our statute differed from George II, and was only in affirmance of the common law. The error probably arose from the fact, that the case was argued on but one side, and the views and authorities presented directed the attention of the Court to cases at common law and under Hen. 8. If this be not so, and that case is to be considered as going to the length of saying that under George II, and our statute, there must be a *token*, and that words will not do, we would feel obliged to overrule it.

A false token was indictable at common law and under Hen. 8. If, therefore, George II intended no more, where was the necessity for the statute? And, surely, the attempt to distinguish our statute from George II must fail. The words in George II are " false pretense." In ours they are " or other false pretense whatsoever." No reason can be given why our statute should not embrace all that was embraced in George II. The mischief to be remedied was the same, and the words are substantially the same. It will be necessary, therefore, to consider what was settled to be a "false pretense " under George II. The learning is well digested in East's P. C., Title Cheat, and in Bishop's C. L., Title False Pretense, where all the cases may be found.

It is settled that a *promise* is not a *pretense*. No matter what the form, or however false the promise, to do something in the future, it will not come within the statute. There must be a false allegation of some subsisting fact; but there need not be any token. Lord Kenyon, Ch. J., said, " That the statute 30, George II, was considered to extend to every case where a party had obtained money by

falsely representing himself to be in a situation in which he was not. * * * * * * * * * * * * * *

Hen. 8 required a token to be used, but that being found to be insufficient the statute of . George II introduced another offence, describing it in terms extremely general." And Buller, J., said, "It clearly extended to cases which were not indictable at common law, or under Hen. 8." It is said in Bishop, "no representation of a future event, whether in the form of a promise or not, can be a pretense under the statute, for the pretense must relate to the past, or to the present." And, according to that definition, the facts in *Simpson's case, supra,* were not indictable. He professed to want to see the judgment and to pay it off, all in the future.

The following cases put in East and Bishop show how near the lines are together :

"A said to B, I will tell you where your strayed cattle are if you will pay me." Held not to be indictable. But if he had said, "I *know where they are,* and I will tell you," &c., that would have been indictable. So a man promised to marry a woman and obtained money to buy clothes," &c. Held not to be sufficient. But upon its appearing that he represented himself *to be unmarried,* he was held to be guilty. So if a man buy goods and promises to call to-morrow and pay for them, when he does not mean to do it, this is no false pretense. But if he represent himself to be of large property and able to pay, when he is not, that is a false pretense.

We have discussed these questions at some length, because it was necessary to correct the error which generally obtained from Simpson's case, *supra,* which, as was said at the bar, has made it almost impossible to convict for cheating by false pretense in this State.

We state the rule to be, that a false representation of a subsisting fact, calculated to deceive, and which does deceive, and is intended to deceive, whether the representation be in

writing, or in words, or in acts, by which one man obtains value from another, without compensation is a false pretense, indictable under our statute. But this must not be understood to extend to the mere "tricks of trade," as they are familiarly called, by which a man puffs his wares and deceives no one—as, this is an excellent piece of cloth; or, this is the best horse in the world. Against such craft, ordinary prudence is a sufficient safeguard; or if it be not, the injured party must be left to his civil remedy. Applying the rule to this case, the defendant is clearly guilty. It may be that if the defendant had bought the goods and paid for them with a draft on the New York firm, saying it would be paid on presentation, which he knew was false, it being all in the future, it would not come within the meaning of false pretense; but the defendant represented himself to be the trusted agent of a New York firm, and the son of one of the firm; and this was a representation of a subsisting fact calculated to give him a false credit, and to deceive a prudent man. This was clearly a false pretense, indictable.

There is error. This will be certified that there may be judgment as upon a verdict of guilty.

PER CURIAM.                              Judgment reversed.