STATE OF NORTH CAROLINA v. PAUL T. HINSON

No. 725SC827

(Filed 20 December 1972)

1. False Pretense § 2— failure to allege prosecuting witness actually deceived — sufficiency of indictment

In a case charging defendant with obtaining money by false pretense, defendant's contention that the indictment failed to allege that the prosecuting witness was actually deceived by the alleged representation of the defendant was untenable where the facts alleged in the indictment relating to the misrepresentation were sufficient to imply causation.

2. False Pretense § 2— obtaining money by false pretense — sufficiency of indictment

The indictment charging defendant with obtaining money by false pretense was sufficient to give defendant plenary information of the offense with which he was charged, to protect him from again being put in jeopardy for the same offense, to enable him to prepare for trial and to enable the court to proceed to judgment. G.S. 15-153.

3. False Pretense § 3— sufficiency of evidence to withstand nonsuit

There was sufficient evidence to withstand defendant's motion for nonsuit in a case for obtaining money by false pretense where such evidence tended to show that defendant represented to the prosecuting witness Johnson that he had $360,000 in certificates of

deposit in a Charlotte bank which he would lend to Johnson to enable Johnson to buy real property, that defendant demanded and received from Johnson a broker's fee of $3500 for the loan and that defendant at no time had certificates of deposit in the bank or otherwise available to him the $360,000 he had promised to Johnson.

APPEAL from *Wells, Judge,* 24 July 1972 Session of Superior Court, NEW HANOVER County.

Defendant was charged in a bill of indictment with having obtained money by false pretense from R. R. Johnson on 25 November 1971. He was convicted and appeals from judgment of imprisonment entered on the verdict. After trial, and upon the court's adjudication of defendant's indigency, defendant's trial counsel was appointed to prosecute this appeal.

Facts necessary for decision are stated in the opinion.

*Attorney General Morgan, by Associate Attorney Maddox, for the State.*

*Charles E. Rice III for defendant appellant.*

MORRIS, Judge.

[1] Defendant first assigns as error the court's denial of defendant's motion to quash the indictment for failure to allege an essential element of the crime charged. Defendant contends that the indictment fails to allege that the prosecuting witness, R. R. Johnson, was in fact deceived by defendant's actions and that this omission is fatal. The indictment is as follows:

"The Jurors For The State Upon Their Oath Present: That Paul T. Hinson, late of the County of New Hanover wickedly and feloniously devising and intending to cheat and defraud R. R. Johnson on the 25th day of November, A.D. 1971 with force and arms at and in the county aforesaid, unlawfully, knowingly, designedly and feloniously did unto R. R. Johnson falsely pretend that he had the sum of $360,000.00 in certificates of deposit in the N. C. National Bank in Charlotte, N. C. available to loan the said R. R. Johnson to purchase some property and that the money was available to be loaned to the said R. R. Johnson if he paid defendant a brokers fee of $3500.00.

Whereas, in truth and in fact he did not have the $360,-000.00 in certificates of deposit at all and had no intentions

of loaning the money to the said R. R. Johnson but only wanted to get the brokers fee of $3500.00 from the said R. R. Johnson by means of said false pretense.

By means of which said false pretense, he, the said Paul T. Hinson, knowingly, designedly and feloniously, did then and there unlawfully obtain from the said R. R. Johnson, the following goods and things of value, the property of R. R. Johnson, to wit: in the amount of money of $3500.00 with intent then and there to defraud, against the statute in such case made and provided and against the peace and dignity of the State."

Defendant contends that the indictment fails to allege that Johnson was actually deceived by the alleged representation of the defendant. In *State v. Dale,* 218 N.C. 625, 12 S.E. 2d 556 (1940), defendant was charged with obtaining money by false pretense. The defendant there moved to quash on the ground that the charge relating to false pretense did not show any causation between the representation alleged to have been made by defendant and the obtaining of the money. The court found the objection to be without merit stating that the principle applied in *State v. Whedbee,* 152 N.C. 770, 67 S.E. 60 (1910), is not applicable where the surrender by the victim of the money or other thing of value is the natural and probable result of the false pretense. It is applicable where the indictment fails to bring the conduct of the victim into such relationship with the false pretense as to suggest a reasonable motivation for his act. However, in the case *sub judice,* we are of the opinion that the facts alleged in the indictment relating to the misrepresentation are, *ex proprio vigore,* sufficient to imply causation, since they are obviously calculated to produce the result. See also *State v. Claudius,* 164 N.C. 521, 80 S.E. 261 (1913).

In *State v. Greer,* 238 N.C. 325, 327, 77 S.E. 2d 917 (1953), Justice Parker (later C.J.) said:

"The authorities are in unison that an indictment, whether at common law or under a statute, to be good must allege lucidly and accurately all the essential elements of the offense endeavored to be charged. The purpose of such constitutional provisions is: (1) such certainty in the statement of the accusation as will identify the offense with which the accused is sought to be charged; (2) to

protect the accused from being twice put in jeopardy for the same offense; (3) to enable the accused to prepare for trial, and (4) to enable the court, on conviction or plea of *nolo contendere* or guilty to pronounce sentence according to the rights of the case. (Citations omitted.)"

These purposes were quoted with approval in *State v. Sparrow,* 276 N.C. 499, 510, 173 S.E. 2d 897 (1970), cert. denied *In re Whichard,* 403 U.S. 940, 29 L.Ed. 2d 719, 91 S.Ct. 2258 (1971).

[2] The indictment here gave defendant plenary information of the offense with which he was charged, to protect him from again being put in jeopardy for the same offense, to enable him to prepare for trial, and to enable the court to proceed to judgment. G.S. 15-153. It is beyond credibility that defendant was not well advised of the offense with which he was charged.

This assignment of error is overruled as is assignment of error No. 3 directed to the refusal of the court to arrest judgment for alleged deficiency in the indictment.

[3] Defendant's only other assignment of error is to the court's denial of his motion for nonsuit made at the close of the State's evidence and renewed at the close of all the evidence. The evidence for the State tended to show the following: R. R. Johnson met defendant on 25 or 26 of November 1971 as the result of a telephone call from Johnson's brother. Johnson went to the fishing pier at Wrightsville Beach managed by him and his brother. Defendant introduced himself to Johnson and said he had something he wanted to show Johnson. Defendant had a brief case and some files and showed Johnson some maps of property at White Lake which he said he had purchased from Tildon Walker of Fayetteville and which he said he was in the process of developing. They talked until around midnight. When defendant left he told Johnson he had something he wanted to discuss with Johnson. The next day Johnson and defendant had another talk. Defendant told Johnson that he had some money for the development of the White Lake property, that he understood Johnson was looking for some money with which to buy a piece of property on the beach and that this money was available. He told Johnson that he had $360,000 on certificate of deposit in North Carolina National Bank in Charlotte and this was the money he had borrowed to develop the White Lake property, but he was not ready to go ahead with the project and would either have to return the money to the people from

State v. Hinson

whom he borrowed it or find a place for it. He further said that any transfer of the funds would have to be approved by one John Garcia. That night he again made the statement to Johnson in the presence of Johnson's brother. Johnson and defendant went to Johnson's auditor's office and discussed the matter. After that meeting defendant showed Johnson what he said was a certificate of deposit. Johnson was not certain what the paper was but saw the figure $360,000 on it. Johnson was in the process of borrowing money for the purpose of purchasing Newell's Shopping Center. Defendant told him that the $360,000 had been borrowed from a bank in Nassau and showed Johnson a letter from Nassau. Defendant told Johnson he would lend him the $360,000 at 8% interest over a ten-year period for a fee of $3500. The two made a second trip to the auditor's office where an agreement was prepared and signed by both parties. The agreement set out the terms of the loan and stated that Johnson had paid defendant $500 "as a good faith binder on this contract." The agreement was dated 1 December 1971. Upon leaving the auditor's office, Johnson went to his bank, wrote a check for $3500, cashed the check and gave the money in cash to defendant. Defendant gave him a receipt. Defendant told Johnson that the people who had to approve the transfer were coming to Wilmington but because of the weather he would meet them at Myrtle Beach and later told Johnson that he had met them. Defendant stayed in Johnson's apartment for the almost two weeks that the transaction continued and Johnson saw defendant almost every day. The funds were to be transferred by 20 December 1971. Johnson had a Dun and Bradstreet report run on defendant and this was in process at the time the $3500 was delivered. Other investigations were made, including one with the bank in Charlotte and the Consumer Protection Division of the Attorney General's Office. The result was that there was no money on certificate of deposit or in any other manner to the credit of defendant or his corporation, and defendant stipulated that "at no time has there been a certificate of deposit with the North Carolina National Bank in Charlotte, North Carolina, in the name of Paul T. Hinson or Lakeside Development Corporation in the amount of $360,000.00 or any other amount of money." Johnson went to the police department and had a warrant issued for defendant's arrest. When defendant was arrested, he was asked by the Chief of Police whether he would like to return Johnson's money. Defendant's only reply was "How much bond am I

under?" Johnson paid the $3500 "based on the fact that at this time he (the defendant) had a certificate of deposit or had the money in the North Carolina National Bank in Charlotte that he was to loan to our company, and we based it on the fact that he had this money, this money that could be loaned."

There was evidence that defendant had had an option for the White Lake property but the option had expired 31 March 1971, that no property had been conveyed to defendant, and that defendant had never developed any property in the White Lake area.

Johnson's auditor talked with defendant and Johnson on two occasions. He had a copy of a certificate of deposit with him and although the witness did not examine it carefully he did see that it was for $360,000 and on the North Carolina National Bank.

Johnson's brother was not present for the conferences in the auditor's office but did participate in other discussions. His interest was aroused when defendant showed him the "paper work" of the Lakeside Development over on White Lake, and he then called the prosecuting witness. Defendant said that he owned the land at White Lake and he had the money in Charlotte to develop it, but "that he decided not to develop it now and he had to get in touch with the boys in the Bahamas over there to get it turned loose so they could buy the piece of property for us." Defendant did not tell the witness where in Charlotte he had the $360,000 but he said he had some money on certificate of saving and it would be a few days before he could get it out.

In order to survive nonsuit the State must present evidence tending to show a false representation of a subsisting fact, whether in writing or in words or in acts, which is calculated to deceive and intended to deceive, and which does in fact deceive, by which one person obtains value from another without compensation. G.S. 14-100; *State v. Davenport*, 227 N.C. 475, 42 S.E. 2d 686 (1947). The evidence considered in the light most favorable to the State is plenary to warrant a reasonable inference of the fact in issue—defendant's guilt. It was for the jury to say whether they were convinced beyond a reasonable doubt of the fact of guilt.

We find no prejudicial error in defendant's trial.

No error.

Judges CAMPBELL and PARKER concur.