STATE OF NORTH CAROLINA v. JOHN JASON CRONIN

No. 96

(Filed 1 February 1980)

**1. False Pretense § 2.1— representations did deceive—bill of indictment sufficient**

In a prosecution for obtaining property by false pretenses in violation of G.S. 14-100, there was no merit to defendant's contention that the bill of indictment was fatally defective because there was no specific allegation that defendant's false representations did in fact deceive a named bank, since the indictment alleged that defendant knowingly and falsely made false representations to the bank that he was offering as security for a loan a new mobile home having a value of $10,850, when the offered security was actually a fire damaged mobile home having a value of $2500, and that defendant by means of such false pretense and with intent then and there to defraud the bank received from the bank $5704.54, and the allegations contained in the bill of indictment were sufficient to raise a reasonable inference that the bank made the loan because it was deceived by defendant's false representations.

**2. False Pretense § 2.1— property obtained without compensation—allegation not required in bill of indictment**

Failure of a victim to obtain compensation is not an essential element of the offense of obtaining property by false pretenses, and it is therefore not necessary to allege in a bill of indictment charging false pretenses that the accused obtained property from the victim "without compensation."

3. **False Pretense § 1— intent to deceive as element of crime—instructions proper**

When a person obtains something of value by means of misrepresentations with intent to deceive the victim, the intent to cheat or defraud required by G.S. 14-100 exists; therefore, the trial court's instruction that, in order to return a verdict of guilty, the jury must find that defendant "intended to deceive" the bank and did in fact deceive the bank was sufficient.

4. **False Pretense § 1— elements of crime**

The crime of obtaining property by false pretenses pursuant to G.S. 14-100 requires a false representation of a subsisting fact or a future fulfillment or event which is calculated and intended to deceive, which does in fact deceive, and by which one person obtains or attempts to obtain value from another.

5. **False Pretense § 3.1— deceiving bank—sufficiency of evidence**

In a prosecution for obtaining property by false pretenses, evidence was sufficient to be submitted to the jury where it tended to show that defendant made false representations to a bank that he was offering as security for a loan a new mobile home having a value of $10,850; the offered security was actually a fire damaged mobile home having a value of $2500; defendant intended to deceive the bank; and defendant received from the bank $5704.54.

6. **Criminal Law § 131—newly discovered evidence—defendant not entitled to new trial**

The trial court did not err in denying defendant's motion for appropriate relief made on the ground of newly discovered evidence, since such "evidence" was a document which defendant had in his possession three or four days prior to trial and in the exercise of reasonable diligence he could have produced and presented the evidence at trial.

APPEAL by the State from the decision of the North Carolina Court of Appeals, reported in 41 N.C. App. 415, 255 S.E. 2d 240 (1979), which found error in the trial before *Small, J.*, at the 2 October 1978 Session of CURRITUCK Superior Court and ordered a new trial.

Defendant was charged in a bill of indictment proper in form with obtaining property by false pretenses in violation of G.S. 14-100. Defendant entered a plea of not guilty.

The State's evidence tended to show that defendant had had several credit transactions with the Bank of Currituck prior to the events relevant to the crime charged in this case. In the latter part of March, 1978, defendant visited the Bank of Currituck to talk with Sam T. Moore, Jr., the chief executive officer of the bank, about financing a new mobile home. Defendant was asked to

fill out a credit application form which he subsequently executed and returned on 31 March 1978. Defendant represented to Moore that the mobile home had a suggested retail price of $10,850.00, but that defendant had about $5,000.00 to use as a down payment and wanted the bank to finance the balance. He showed Moore a purchase agreement for the mobile home from Deltona Mobile Home Sales, but Moore failed to retain the agreement and could not recall its precise terms.

In the loan application, defendant described the mobile home as a "1977 Doral, three bedroom, two bath, beautiful house, mobile home." Wilton E. Bray, the assistant vice-president and loan officer of the bank, filled out the necessary loan documents. Defendant executed an instrument granting the bank a secured interest in collateral described as a "1978 Mansefield mobile home—Doral model, I.D. #H-3513." The bank agreed to loan defendant a total of $5,704.54, which included $4,900.00 in net loan proceeds for the purchase of the mobile home, $500.00 for a previous ninety-day note from defendant held by the bank and $304.54 for credit life insurance requested by defendant. Bray then prepared a cashier's check in the amount of $4,900.00 payable to both Deltona Mobile Home Sales and defendant for loan proceeds for the purchase of the mobile home.

In the middle of March, 1978, defendant went to the sales office of Deltona Mobile Home Sales in Chesapeake, Virginia, and spoke with Daniel W. Chandler, III, general manager of the company. Defendant was interested in buying a mobile home in Deltona's inventory which, prior to being sold, had been damaged by fire. Chandler described this as a Marshfield mobile home, three bedroom, two bath with serial number H-3513. Defendant represented that he was in the profession of repairing and reselling mobile homes and automobiles and wanted to purchase the mobile home for that purpose. Although valued at close to $11,000.00 before being damaged, the mobile home was not in a liveable condition in its current state. Chandler and defendant agreed upon a price of $2,620.00, and Chandler gave a copy of the purchase agreement to defendant.

On 1 April 1978, defendant returned to Deltona with a Cashier's check for the amount of $4,900.00. Defendant explained to Chandler that this amount of money was to pay for both the

mobile home and the remodeling. Chandler made arrangements with the People's Bank of Chesapeake by which the check issued by the Bank of Currituck in the amount of $4,900.00 was deposited, the purchase price of the mobile home of $2,620.00 was credited to the account of Deltona Mobile Home Sales and defendant received a cashier's check back in the amount of $2,280.00.

Defendant was at this time in the process of opening a new place of business, a pizza parlor. He subsequently returned several times to the Bank of Currituck seeking an additional loan, which the bank was unwilling to make. Around 15 July 1978 the bank had still not received the documents of title or the insurance required by the bank on a mobile home loan. The loan was three months past due, and defendant had not yet made the first payment. Moore and Bray asked defendant to tell them where the mobile home was located so that they could see it. Defendant first directed them to an older mobile home in which his family resided and then to a mobile home belonging to someone else. He denied that a burned out mobile home parked next to his pizza parlor was related in any way to his transaction with the Bank of Currituck. Nevertheless, upon investigation the bank officers realized that the mobile home next to the Pizza Shack met the description and had the same serial number as the mobile home listed as collateral. Moore then told defendant that 20 July 1978 was the final deadline by which time defendant must have the loan brought up to date and properly documented and insured. When such results were not forthcoming, Moore contacted the sheriff, and a warrant was issued for defendant's arrest.

Defendant, being found indigent by the court, elected to waive the assistance of court-appointed counsel and represent himself at trial.

At the close of the State's evidence, defendant moved for judgment as of nonsuit, now denominated a motion for dismissal under G.S. 15A-1227, elected not to offer any evidence, and renewed his motion for judgment as of nonsuit. Defendant's motions were denied.

The jury returned a verdict finding defendant guilty of obtaining property by false pretenses. Defendant was sentenced to imprisonment for a term of four years, the court recommending

that work release or parole be conditioned on defendant making restitution to the Bank of Currituck in the amount of $5,450.76.

On 16 October 1978 defendant, represented by counsel, filed a motion for appropriate relief pursuant to G.S. 15A-1411 based upon a claim of newly discovered evidence. At a hearing on the motion at the 23 October 1978 term of the Superior Court of Dare County, Judge Small denied defendant's motion.

Defendant appealed to the Court of Appeals, which in an opinion by Judge Mitchell ordered a new trial on the grounds that the trial court erred in failing to properly instruct the jury as to all the elements of the crime charged. The State petitioned this Court for discretionary review pursuant to G.S. 7A-31, and its petition was allowed on 24 August 1979.

*Rufus L. Edmisten, Attorney General, by William F. O'Connell, Special Deputy Attorney General, and Robert R. Reilly, Assistant Attorney General, for the State.*

*Aldridge, Seawell & Khoury, by G. Irvin Aldridge and Daniel D. Khoury for defendant appellee.*

BRANCH, Chief Justice.

Defendant first assigns as error the trial court's failure to dismiss the charges against him. Defendant contends that the court should have allowed his motion made at the close of the State's evidence to dismiss the bill of indictment for failure to charge every essential element of the offense of obtaining property by false pretenses.

Initially, we note that since defendant contended that the bill of indictment failed to charge an offense, he should have moved to dismiss pursuant to G.S. 15A-954(a)(10) which by virtue of the provisions of G.S. 15A-952(d) may be made at any time during the trial. Nevertheless, we have elected to consider this assignment of error.

The indictment in the present case reads as follows:

THE JURORS FOR THE STATE UPON THEIR OATH PRESENT that on or about the 31 day of March, 1978, in Currituck County John Jason Cronin wickedly and feloniously

devising and intending to cheat and defraud The Bank of Currituck, a banking corporation, with force and arms at and in the county aforesaid, unlawfully, knowingly, designedly and feloniously did unto The Bank of Currituck, a banking corporation, falsely pretend that he, the said, JOHN JASON CRONIN, was purchasing a new 1977 Marshfield, Doral Model mobile home having a value of Ten Thousand Eight Hundred Fifty and No/100 Dollars ($10,850.00) by making a Five Thousand Dollar ($5,000.00) cash downpayment on said mobile home and financing the remaining balance through a bank loan with The Bank of Currituck, a banking corporation, whereas in truth and in fact, he, the said JOHN JASON CRONIN, was purchasing a fire damaged mobile home having a value of Two Thousand Five Hundred and No/100 Dollars ($2,500.00). By means of which said false pretense, he, the said, JOHN JASON CRONIN, knowingly, designedly and feloniously, did then and there unlawfully obtain from the said The Bank of Currituck, a banking corporation, the following goods and things of value, the property of The Bank of Currituck, a banking corporation, to wit: currency of the United States in the value of Five Thousand Seven Hundred Four and 54/100 Dollars ($5,704.54), with intent then and there to defraud, against the statute in such case made and provided, and against the peace and dignity of the State.

G.S. 15A-924(a)(5) requires that every bill of indictment must contain:

A plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation.

In *State v. Greer*, 238 N.C. 325, 77 S.E. 2d 917 (1953), Parker, J. (later Chief Justice), in considering the validity of a bill of indictment wrote:

The authorities are in unison that an indictment, whether at common law or under a statute, to be good must allege lucidly and accurately all the essential elements of the offense endeavored to be charged. The purpose of such con-

stitutional provisions is: (1) such certainty in the statement of the accusation as will identify the offense with which the accused is sought to be charged; (2) to protect the accused from being twice put in jeopardy for the same offense; (3) to enable the accused to prepare for trial, and (4) to enable the court, on conviction or plea of *nolo contendere* or guilty to pronounce sentence according to the rights of the case. [Citations omitted.]

*Id.* at 327, 77 S.E. 2d at 919.

The crime of obtaining property by false pretenses is defined by G.S. 14-100, which as amended states in part:

(a) If any person shall knowingly and designedly by means of any kind of false pretense whatsoever, whether the false pretense is of a past or subsisting fact or of a future fulfillment or event, obtain or attempt to obtain from any person within this State any money . . . or other thing of value with intent to cheat or defraud any person of such money . . . or other thing of value, such person shall be guilty of a felony . . . .

In 1975 G.S. 14-100 was amended, effective 1 October 1975, to alter the law in two significant respects. First, the amendment makes a false representation "of a past or subsisting fact or of a future fulfillment or event" punishable under the statute. The statute formerly required that the false representation be of a subsisting fact. *See State v. Agnew,* 294 N.C. 382, 241 S.E. 2d 684, *cert. denied,* 439 U.S. 830 (1978); *State v. Knott,* 124 N.C. 814, 32 S.E. 798 (1899); *State v. Phifer,* 65 N.C. 321 (1871). Second, the statute now includes in the definition of the crime an *attempt* to obtain something of value with an intent to defraud. Formerly, to commit the crime defendant must have actually obtained something of value as a result of his false pretense. *See State v. Davenport,* 227 N.C. 475, 42 S.E. 2d 686 (1947). As observed by Judge Mitchell writing for the Court of Appeals, this interpretation of the statute as amended is technically in conflict with its title, "Obtaining property by false pretenses." Nevertheless, captions of a statute cannot control when the meaning of the text is clear. *Dunn v. Dunn,* 199 N.C. 535, 155 S.E. 165 (1930). Here the Legislature, by the unambiguous language of the 1975 amendment, clearly intended to broaden the scope of the proscribed ac-

tivity in the manner set forth above. However, we find nothing in the 1975 amendment which indicates that the Legislature intended to alter the definition of false pretense in any other respect.

Defendant in the instant case challenges the indictment for its failure to allege: (1) that defendant did in fact deceive the Bank of Currituck; and (2) that defendant obtained property from the Bank of Currituck without compensation. We will consider these contentions seriatim.

[1] Defendant relies heavily upon the case of *State v. Whedbee*, 152 N.C. 770, 67 S.E. 60 (1910), in support of his contention that the bill of indictment in instant case was fatally defective because there was no specific allegation that defendant's false representations did in fact deceive the bank. In *Whedbee* the bill of indictment alleged that the defendant had knowingly made a series of misrepresentations about a certain corporation, by means of which he obtained a promissory note from W. C. Heath with intent to cheat and defraud W. C. Heath. This Court held that the bill of indictment was fatally defective in failing to state the causal connection between the false representation and the execution of the note by W. C. Heath. In so holding, the Court stated:

> . . . it does not appear by direct or express allegation, or even by implication, what causal connection the false statements had with the note, or how W. C. Heath was induced thereby to make and endorse the note. We must see by the very indictment itself, not only that false representations were made, but, as we have already said, that they were calculated to deceive W. C. Heath, and that by the deception he was actually induced to give the note. The indictment, therefore, fails at its vital point.

*Id.* at 775, 67 S.E. at 63. The Court also quoted with approval from *State v. Fitzgerald*, 18 N.C. 408 (1835), the following:

> . . . it seems to us essential, in a case where there is no obvious connection between the result produced and the falsehood practiced, that the facts should be set forth which do connect the consequence with the deceitful practice. [Italics removed.]

152 N.C. at 777, 67 S.E. at 64.

State v. Cronin

Defendant does not point to later decisions by this Court which tend to support his position; however, we find that the Court of Appeals has recently addressed the specific question under consideration. In *State v. Hinson*, 17 N.C. App. 25, 193 S.E. 2d 415 (1972), *cert. denied*, 282 N.C. 583, 194 S.E. 2d 151 (1973), *cert. denied*, 412 U.S. 931 (1973), the Court of Appeals squarely addressed the question presented here and held that it was not necessary to allege specifically that the victim was in fact deceived by the false pretense when the facts alleged in the bill of indictment are sufficient to suggest that the surrender of something of value was the natural and probable result of the false pretense. *Accord, State v. Hines*, 36 N.C. App. 33, 243 S.E. 2d 782, *cert. denied*, 295 N.C. 262, 245 S.E. 2d 779 (1978). This holding in *Hinson* was based upon the holding of this Court in *State v. Dale*, 218 N.C. 625, 12 S.E. 2d 556 (1940).

In *Dale* the defendant moved to quash the indictment charging false pretense because it failed to show any causation between the alleged false representation and the *obtaining of* something of value. In denying the motion to quash, the Court speaking through Seawell, J., stated:

The principle applied by the Court in *S. v. Whedbee*, 152 N.C., 770, 67 S.E., 60, we do not understand to be applicable where the surrendering of the money or other thing of value is the natural and probable result of the false pretense. Certainly, a mere "lie," which of itself and upon the face of the pleading offers no inducement to a man to give up his money, would not undergird the crime, but it may be seen as an important element in obtaining money under false pretense, when the latent connection is brought out . . . . The facts alleged in the indictment here, relating to the misrepresentation, *ex proprio vigore*, are such as to imply causation, since they are obviously calculated to produce the result.

*Id.* at 641, 12 S.E. 2d at 565. *See State v. Claudius*, 164 N.C. 521, 80 S.E. 261 (1913). Defendant argues that *Dale* and *Claudius* are distinguishable from *Hinson* and the case *sub judice* because *Dale* and *Claudius* deal with the causal connection between defendant's false representation and the obtainment of something of value from the victim. On the other hand, *Hinson* and the instant case are concerned with the question of whether the false pretense in

fact deceived the victim. This is a distinction without a difference. If the false pretense caused the victim to give up his property, it logically follows that the property was given up because the victim was in fact deceived by the false pretense.

Here the indictment, in essence, alleged that defendant knowingly and falsely made false representations to the bank that he was offering as security for a loan a new mobile home having value of $10,850, when actually the offered security was a fire-damaged mobile home of the value of $2,500, and that defendant by means of such false pretense and with intent then and there to defraud the bank received from the bank the sum of $5,704.54.

In our opinion, the allegations contained in this bill of indictment were sufficient to raise a reasonable inference that the bank made the loan because it was deceived by defendant's false representations.

[2] By this assignment of error, defendant also challenges the bill of indictment on the ground that it failed to charge that defendant obtained property from the Bank of Currituck "without compensation."

There has been some confusion in our cases concerning the necessity of alleging in a bill of indictment charging false pretense that the accused obtained property "without compensation." In *State v. Phifer, supra,* this Court in defining the offense of false pretense included the language "without compensation." Thereafter, in many cases this Court has quoted *Phifer* and used the words "without compensation." *State v. Davenport, supra; State v. Mikle,* 94 N.C. 843 (1886); *State v. Young,* 76 N.C. 258 (1877). On the other hand, we find cases which cite *Phifer* as authority in defining the crime of false pretense without including this language. *State v. Matthews,* 121 N.C. 604, 28 S.E. 469 (1897); *State v. Dickson,* 88 N.C. 643 (1883); *State v. Eason,* 86 N.C. 674 (1882). We take particular note of a number of cases in which *Phifer* is cited and the phrase "without compensation" is used, and yet *some* compensation was in fact given by the defendant. *See State v. Howley,* 220 N.C. 113, 16 S.E. 2d 705 (1941); *State v. Roberts,* 189 N.C. 93, 126 S.E. 161 (1925); *State v. Claudius, supra; State v. Mangum,* 116 N.C. 998, 21 S.E. 189 (1895); *State v. Hefner,* 84 N.C. 751 (1881).

The confusion which has existed concerning the necessity of using this language in a bill of indictment charging false pretense is most evident in *State v. Carlson,* 171 N.C. 818, 89 S.E. 30 (1916). In that case, Justice Walker writing for the Court seemingly embraced two definitions of the crime of false pretense, one of which contained that langauge "without compensation" and another which omitted that language. We quote from *Carlson*:

> A criminal false pretense may be defined to be the false representation of a subsisting fact, whether by oral or written words or conduct, which is calculated to deceive, intended to deceive, and which does in fact deceive, and by means of which one person obtains value from another without compensation. *S. v. Phifer,* 65 N.C., 321; *S. v. Whedbee,* 152 N.C., 770. In order to convict one of this crime the State must satisfy the jury beyond a reasonable doubt (1) that the representation was made as alleged; (2) that property or something of value was obtained by reason of the representation; (3) that the representation was false; (4) that it was made with intent to defraud; (5) that it actually did deceive and defraud the person to whom it was made. *S. v. Whedbee, supra.*

*Id.* at 824, 89 S.E. at 33.

In the recent case of *State v. Hines, supra,* Judge Morris (now Chief Judge) writing for the Court of Appeals in a well-reasoned and carefully researched opinion stated:

> Certainly, beginning with the statute codified as Potter's Revisal of 1819, laws of 1811, Ch. 814 § 2, through the present G.S. 14-100, there is and has been no statutory requirement that the State must prove that the defendant obtained the goods, property, things of value, services, etc., without compensation to the victim. Nor has our research disclosed a case in which the question of the victim's compensation was before the Court, although in some cases the victim received nothing at all, and in some the victim did receive some compensation of a sort. We conclude that the phrase "without compensation" has constituted *obiter dictum* in the cases where it has been used, and it is not an element of the offense of false pretense.

*Id.* at 40, 243, S.E. at 786.

Finally, we note that G.S. 14-100, which defines the crime of false pretenses, does not make the failure of the victim to obtain compensation an essential element of the crime of false pretenses.

We hold that the phrase "without compensation" is not an essential element of the offense of false pretenses, and, therefore, it is not necessary to allege in a bill of indictment charging false pretenses that the accused obtained property from the victim "without compensation." Any language in our cases to the contrary is no longer authoritative.

Defendant finally challenges the bill of indictment on the grounds that it violated his rights under Article I, Section 23 of the North Carolina Constitution which states in part that "In all criminal prosecutions, every person charged with crime has the right to be informed of the accusation . . . ." Defendant contends that the indictment here violated the requirement imposed by our decisions that an indictment "to be good must allege lucidly and accurately all the essential elements of the offense endeavored to be charged." *State v. Barnes*, 253 N.C. 711, 714, 117 S.E. 2d 849, 851 (1961); *State v. Greer, supra.* Since we have concluded that the indictment here accurately alleged all the essential elements of the offense, we hold that defendant's motion was properly denied by the trial court.

Thus, the challenged indictment charged the crime of false pretenses with sufficient certainty to apprise defendant of the charge against him, so as to protect him from a subsequent prosecution for the same offense and to enable the court properly to pronounce sentence upon conviction, a plea of guilty or a plea of *nolo contendere.* This assignment of error is overruled.

Defendant assigns as error the trial court's failure to instruct the jury properly on all elements of the crime charged.

The court, in substance, instructed the jury that in order to return a verdict of guilty it must find that defendant knowingly made false representations; that defendant "intended to deceive" the bank thereby and did in fact deceive the bank; and that as a result of such deceit defendant received property from the bank having a value of $5,704.54.

[3] Defendant maintains that the language "intended to deceive" does not meet the statutory requirements of G.S. 14-100 which re-

quire that there be an "intent to cheat or defraud." The Court of Appeals agreed with defendant and ordered a new trial on the basis of this assignment of error. The court reasoned that an intent to deceive means "to cause someone to believe something that is false" and that an intent to "cheat or defraud" includes the intent to actually deprive someone of something of value.

The crime of false pretense is statutory. G.S. 14-100. The statute has remained substantially in its present form since its enactment. The statute defining the crime of false pretense was first codified in this jurisdiction in 1811 in North Carolina Session Laws, Chapter 11, Section 2, and contained the following pertinent language:

> . . . if any person or persons shall knowingly . . . by any false token or other false pretense . . . obtain from any person . . . any money, goods, property or other thing of value . . . with intent to *cheat or defraud* any person or persons, or corporation of the same, shall be held and deemed guilty of fraud and deceit . . . . [Emphasis added.]

In interpreting the statute, the Court in *State v. Phifer, supra,* stated:

> We state the rule to be that a false representation of a subsisting fact calculated to deceive, and which does deceive, and is intended to deceive, whether the representation be in writing, or in words, or in acts, by which one man obtains value from another without compensation, is a false pretense, indictable under our statute.

*Id.* at 325-26.

The statute as recodified, including our present G.S. 14-100, has included the words "intent to cheat or defraud." Yet the majority of our cases have followed the definition of the crime of false pretenses as set forth in *Phifer. State v. Louchheim,* 296 N.C. 314, 250 S.E. 2d 630, *cert. denied,* 100 S.Ct. 71 (1979); *State v. Agnew, supra; State v. Davenport, supra; State v. Howley, supra; State v. Roberts, supra; State v. Carlson, supra; State v. Claudius, supra; State v. Whedbee, supra; State v. Matthews, supra; State v. Phifer, supra.*

The Court of Appeals in the case before us attempted to distinguish the long-recognized authority represented by these cases on the ground that they were decided prior to the 1975 amendment of the statute. We do not find this to be a valid distinction. Although the 1975 amendment made several discrete changes, including those heretofore noted, the amendment did not alter the language of the statute requiring that the property be obtained "with intent to cheat or defraud."

We have held that the crime of obtaining property by false pretense is committed when one obtains a loan of money by falsely representing the nature of the security given. *State v. Howley, supra; State v. Roberts, supra. See also People v. Oscar*, 105 Mich. 704, 63 N.W. 971 (1895).

In instant case, defendant obtained a loan of $5,704.54 by representing to the bank that the security given was a new mobile home with a value of $10,850.00, when in fact it was a fire-damaged mobile home having a value of $2,620.00. The bank was deceived and consequently acted upon these false representations.

In the context of the provisions of G.S. 14-100, we are of the opinion that when a person obtains something of value by means of misrepresentations with intent to deceive the victim, the requisite intent to cheat or defraud exists.

For the reasons stated, this assignment of error is overruled.

[4]   In light of the 1975 amendment to the statute and our prior discussion of the relevant law, we hold that the crime of obtaining property by false pretenses pursuant to G.S. 14-100 should be defined as follows: (1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another. *See State v. Davenport, supra;* G.S. 14-100. This holding in no way affects the general rule that an indictment for a statutory offense is sufficient when the offense is charged in the words of the statute. *State v. Sparrow*, 276 N.C. 499, 173 S.E. 2d 897 (1970), *cert. denied*, 403 U.S. 940 (1971); *State v. McBane*, 276 N.C. 60, 170 S.E. 2d 913 (1969).

[5]   Defendant next assigns as error the failure of the trial judge to allow his motion for judgment as of nonsuit. He argues that the

State has failed to present sufficient evidence to show: (1) that defendant intended to deceive the bank; (2) that the bank was in fact deceived by his misrepresentations; and (3) that he received something of value without compensation. The latter contention is obviously without merit. We have hereinabove held that obtaining property by false pretense *without compensation* is not an element of the crime of false pretense. Even in this day of double digit inflation, the sum of $5,704.54 is still "something of value." Furthermore, when considered in the light most favorable to the State and giving the State the benefit of every reasonable inference to be drawn from the evidence, as we must, we hold that there was ample evidence from which the jury could reasonably infer that defendant intended to deceive by false pretenses, the bank was in fact deceived by defendant's false pretenses, and defendant thereby received something of value. *State v. Agnew, supra; State v. McNeil,* 280 N.C. 159, 185 S.E. 2d 156 (1971).

[6]  Defendant finally contends that the trial court erred in denying his motion for appropriate relief made pursuant to G.S. 15A-1411. His motion is based upon newly discovered evidence.

This Court has held that the prerequisites for a new trial on the grounds of newly discovered evidence are as follows:

1. That the witness or witnesses will give the newly discovered evidence. [Citations omitted.]

2. That such newly discovered evidence is probably true. [Citations omitted.]

3. That it is competent, material and relevant. [Citations omitted.]

4. That due diligence was used and proper means were employed to procure the testimony at the trial. [Citations omitted.]

5. That the newly discovered evidence is not merely cumulative. [Citations omitted.]

6. That it does not tend only to contradict a former witness or to impeach or discredit him. [Citations omitted.]

7. That it is of such a nature as to show that on another trial a different result will probably be reached and that the right will prevail. [Citations omitted.]

State v. Cronin

*State v. Casey,* 201 N.C. 620, 624-25, 161 S.E. 81, 83-84 (1931). *See generally* 12 Strong's N.C. Index 3d, *Trial,* § 49, and cases cited therein. Such a motion is addressed to the sound discretion of the trial judge and is not subject to review absent a showing of an abuse of discretion. *Webb v. Gaskins,* 255 N.C. 281, 121 S.E. 2d 564 (1961).

At the hearing on defendant's application for appropriate relief, his evidence tended to show that he delivered to the bank the purchase agreement for the mobile home offered for security and that the agreement disclosed upon its face that the mobile home had been damaged by fire. Defendant testified that he obtained this document through discovery on the Friday before he was tried on the following Tuesday, but that he did not realize what it was and thus did not attempt to introduce it into evidence at trial. Defendant at trial cross-examined Mr. Moore about this document, and the latter stated that contrary to normal bank policy he had not retained a copy of the agreement. Since defendant admittedly had a copy of the document in his possession three or four days before the trial, we find that he was in a position, in the exercise of reasonable diligence, to have produced and presented this evidence at trial.

Although defendant, a layman, represented himself at trial, he understandingly chose to do so after the court had found him to be an indigent and appointed a lawyer satisfactory to defendant to represent him. He elected nevertheless to request that the trial proceed and that he be allowed to represent himself when it was disclosed that Mr. Aldridge, the attorney appointed by the court, had a conflict which would necessitate a continuance of defendant's case. In addition to his oral request that the trial proceed and that he be allowed to represent himself, defendant executed a written waiver of counsel.

It is well settled that a defendant has the right to defend himself in a criminal action, and that the constitutional guarantee of counsel does not justify forcing counsel upon an accused who rejects the offer of counsel and elects to represent himself in the trial and disposition of his case. *State v. Morgan,* 272 N.C. 97, 157 S.E. 2d 606 (1967) (per curiam); *State v. Bines,* 263 N.C. 48, 138 S.E. 2d 797 (1964); *State v. McNeil,* 263 N.C. 260, 139 S.E. 2d 667 (1965). When a defendant understandingly chooses to appear *pro*

*se,* he does so at his peril and acquires no greater right or latitude than would be allowed an attorney acting for him. *State v. Pritchard,* 227 N.C. 168, 41 S.E. 2d 287 (1947); *State v. Lashley,* 21 N.C. App. 83, 203 S.E. 2d 71 (1974). Note, *Right to Defend Pro Se,* 48 N.C. L. Rev. 678 (1970). Under these circumstances, we find no abuse of discretion on the part of the trial judge in denying defendant's motion for appropriate relief.

For the reasons stated, this case is remanded to the Court of Appeals, with instruction that it be remanded to the Superior Court of Currituck County for entry of judgment in accordance with this opinion.

Reversed and remanded.