McGEE, Judge.
Allen Brian Cornett (defendant) was convicted of obtaining property by false pretenses in violation of N.C. Gen. Stat. § 14-100 and was sentenced to a probationary sentence on 23 July 2003. Defendant appeals.
Defendant purchased a 1998 Corvette in June 1999 and obtained a loan from Branch Banking and Trust (BB&T). BB&T placed a lien (BB&T lien) on the title of the Corvette. Defendant later obtained two personal loans from American General Finance (American General) in January 2001 to pay off the BB&T debt. American General secured its loans by placing liens against the Corvette. Defendant completed and signed several documents relating to the two American General liens. Defendant paid off the BB&T debt and BB&T was to transfer the Corvette title to American General. However, after releasing its lien, BB&T mistakenly sent the Corvette title to defendant. American General contacted BB&T about the mistake. BB&T sent three letters to defendant demanding that defendant return the mistakenly issued title. At the end of January 2001, BB&T sent the first letter to defendant's last known address. This address was the same address to which BB&T had mistakenly sent defendant the Corvette title only a couple of weeks earlier. The second and third letters were sent via certified mail to an alternative address defendant had given BB&T. The second letter was signed for and accepted by a woman believed to be defendant's girlfriend. BB&T also tried, unsuccessfully, to reach defendant by telephone at several telephone numbers defendant had provided BB&T. BB&T obtained a duplicate title, which it sent to American General in early March 2001. BB&T's third letter to defendant indicated that the title it had mistakenly sent to defendant was void because a duplicate title had been issued.
Defendant had arranged to sell the Corvette to Wayne Roberts (Roberts). Defendant showed Roberts the title that defendant had mistakenly received from BB&T, and which showed that BB&T had released its lien. The title did not indicate the American General liens. In March 2001, Roberts agreed to purchase the 1998 Corvette from defendant for $12,000, plus Roberts' 1992 Corvette. Defendant and Roberts agreed to have Everett Chevrolet act as an intermediary for the sale. Defendant sold Everett Chevrolet the 1998 Corvetteon 26 March 2001 for $20,000. Defendant gave Roberts $8,000 and kept $12,000. Roberts paid $4,000 to Everett Chevrolet as a down payment on the 1998 Corvette and gave his 1992 Corvette to defendant.
Everett Chevrolet sent the mistakenly issued 1998 Corvette title to the Division of Motor Vehicles, but the title was returned because it was void. Everett Chevrolet reclaimed the 1998 Corvette from Roberts, who reclaimed the 1992 Corvette from defendant. Upon learning of the void title, Everett Chevrolet contacted its insurance company and received $20,000 from the insurance company to cover Everett Chevrolet's loss.
Defendant was charged with "knowingly and designedly with the intent to cheat and defraud, [obtaining] $20,000 in United States currency from Everett Chevrolet, Incorporated by means of a false pretense which was calculated to deceive and did deceive" on 16 April 2001. Defendant was convicted by a jury on 23 July 2003. We note that defendant presents arguments on only three of his assignments of error, and thereby abandons his other assignments of error. N.C.R. App. P. 28(b)(6).
I.
Defendant first argues that the trial court erred when it did not permit defendant's attorney to mention insurance in his opening statement. Specifically, defendant argues that he was prejudiced when he was not permitted to forecast for the jury the fact that Everett Chevrolet had been reimbursed for its $20,000 loss by its insurance company. Defendant argues that the evidence regardingthe insurance money paid to Everett Chevrolet was admissible under Rule 411 of the North Carolina Rules of Evidence, which provides:
[e]vidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.
N.C. Gen. Stat. § 8C, Rule 411 (2003). Defendant argues the insurance payment tended to show that the witnesses who testified on behalf of Everett Chevrolet were biased and that Everett Chevrolet was motivated to pursue criminal charges against defendant because it was the only way for Everett Chevrolet to recover the $20,000 it lost in its transaction with defendant. We find no error in the trial court's decision to exclude this information from defendant's opening statement.
The purpose of an opening statement "is to allow the party to inform the court and jury of the nature of his case and the evidence he plans to offer in support of it." State v. Elliott, 69 N.C. App. 89, 93, 316 S.E.2d 632, 636, disc. review denied, 311 N.C. 765, 321 S.E.2d 148 (1984). Though "counsel generally should not (1) refer to inadmissible evidence, (2) `exaggerate or overstate' the evidence, or (3) discuss evidence he expects the other party to introduce," State v. Freeman, 93 N.C. App. 380, 389, 378 S.E.2d 545, 551, (citations and quotations omitted), disc. review denied, 325 N.C. 229, 381 S.E.2d 787 (1989), counsel should be given wide latitude in the scope of his or her opening statement. State v. Gladden, 315 N.C. 398, 417, 340 S.E.2d 673,685, cert. denied, 479 U.S. 871, 93 L. Ed. 2d 166 (1986). Ultimately, however, the trial court has the discretion to determine the scope of an opening statement. Elliott, 69 N.C. App. at 93, 316 S.E.2d at 636.
In the present case, the trial court decided not to permit defendant to mention the insurance payment received by Everett Chevrolet in his opening statement but did allow defendant to see if he could find law to support his theory. The trial court also agreed to allow defendant to lay a foundation to present information on the insurance payment later in the trial. This decision regarding defendant's opening statement was well within the bounds of the trial court's discretion. At issue in this trial was the criminal culpability of defendant. The motivation for pressing charges against defendant was peripheral. The trial court decided, in its discretion, that as part of defendant's opening statement, information regarding the insurance payment to Everett Chevrolet was irrelevant, and would perhaps be prejudicial. We will uphold a trial court's decision regarding the scope of counsel's opening arguments unless the trial court abused its discretion. See State v. Call, 349 N.C. 382, 396, 508 S.E.2d 496, 505 (1998). In the present case, defendant does not contend, and the record does not show, that the trial court abused its discretion.
Moreover, we note that even if the trial court erred in not permitting defendant to include information on the insurance payment to Everett Chevrolet in his opening statement, the errorwas harmless. Defendant was ultimately allowed to introduce evidence of the insurance payment and was able to draw the conclusions during his closing argument that the State's witnesses were prejudiced and biased because of Everett Chevrolet's receipt of this insurance payment. Thus, the jury heard defendant's theory, and there is no basis for defendant's argument that the result of the trial would have been different if this information had been permitted in his opening statement. We overrule this assignment of error.
II.
Defendant next argues that the trial court erred in denying defendant's motions to dismiss the charge that defendant obtained property by false pretenses. We disagree. A defendant's motion to dismiss should be denied when "there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." State v. Powell, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." State v. Fletcher, 301 N.C. 709, 712, 272 S.E.2d 859, 861 (1981). In ruling on a defendant's motion to dismiss, the trial court must consider the evidence in the light most favorable to the State and the State is entitled to every reasonable inference that can be drawn from the evidence. Powell, 299 N.C. at 99, 261 S.E.2d at 117. The essential elements of obtaining property by false pretenses are: "(1) a false representation of asubsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another." State v. Cronin, 299 N.C. 229, 242, 262 S.E.2d 277, 286 (1980). Our Supreme Court has also stated that "[a]n essential element of the offense is that the defendant acted knowingly with the intent to cheat or defraud." State v. Parker, 354 N.C. 268, 284, 553 S.E.2d 885, 897 (2001), cert. denied, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002).
Defendant argues there was insufficient evidence that he made a false representation calculated or intended to deceive. Defendant first asserts there was no evidence that he knew of a lien on the title that was sent to him by BB&T. However, evidence showed that when defendant obtained the two personal loans from American General to pay off the BB&T debt on his Corvette, he signed multiple documents with American General that acknowledged American General's liens, including lien recording applications. Evidence at trial also showed that the first letter demanding that he return the mistakenly issued title was sent to defendant at his last known address only a couple of weeks after the title had been sent to him at that same address. Finally, evidence showed that despite talking to a loan assistant at American General regarding the two loans that he received to pay for the Corvette and despite signing multiple loan documents acknowledging the lien, defendant never made any payments on these loans. When viewed in the light most favorable to the State, this evidence gives rise to theinference that defendant knew of the liens on the title, knew that the title had been issued to him by mistake, and thus knew the title was void.
There was also sufficient evidence showing that defendant made false representations. Defendant asserts that BB&T sent him, albeit mistakenly, the title to the Corvette free and clear of any liens. Defendant thus argues that he made no false representations when he showed the title, which appeared to be free and clear, to Roberts and to Everett Chevrolet. However, defendant affirmatively told Roberts that he owned the Corvette and that he had the title free and clear. This evidence, taken with the evidence discussed above, shows that defendant not only knew of the liens on the title but also intentionally tried to deceive the buyers of the Corvette. Thus, there was substantial evidence that defendant "acted knowingly with the intent to cheat or defraud" Parker, 354 N.C. at 284, 553 S.E.2d at 897, and the trial court did not err in denying defendant's motion to dismiss or in permitting the issue of false pretenses to go to the jury.
No error.
Judges BRYANT and THORNBURG concur.
Report per Rule 30(e).